## WOODBECK & MATTER *v.* WILDERS *et als.*

In trespass for driving cattle upon land, alleged in the complaint to be "in the quiet and peaceable possession" of plaintiffs, "claiming the same as in fee simple," plaintiffs proved their possession and actual occupancy. Defendants then offered deeds from I. to M., and from M. to plaintiffs, and from M. to defendants, of an undivided half interest in the land, to show that plaintiffs and defendants were tenants in common, deriving title from the same source, and hence that the action did not lie. Plaintiffs objected on the ground that they relied solely on possession. Objection sustained, and deeds ruled out: *Held*, that the ruling was right, there having been no deraignment of title from its source, nor any proof to connect the holding of the parties with the deeds, or to show that possession was taken or claimed under them.

Where plaintiff and defendant hold under a common source of title, it is not necessary, upon a question of title, for either to go beyond that source; but the mere production of a deed from a stranger to plaintiff, without other proof, is not sufficient to show either that such stranger had title, or that his grantee entered under or holds in subordination to the deed.

An unexecuted verbal agreement between joint proprietors of land for the division thereof according to certain boundaries is not binding. Until executed, either party may rescind the agreement.

In trespass for driving cattle upon plaintiff's land, and by means thereof trampling on, consuming and destroying the grass and herbage, and tearing up, subverting and spoiling the soil: *Held*, that plaintiff could ask a witness: "What would have been the injury to the land by turning in two hundred head of cattle on the twelfth, thirteenth and fourteenth of April, and letting them remain in six or seven days?" and "What would it be worth to turn in two hundred or three hundred cattle, and pasture them for six or seven days in the field spoken of?" that the questions as put and answered amounted to little, if anything, more than an estimate of the value of the pasturage or grass.

APPEAL from the Sixth District.

Trespass for damages caused by defendants driving their cattle upon land claimed by plaintiffs. The complaint avers that plaintiffs as joint tenants were, on a day named, "in the peaceable and quiet possession of" a certain tract of land, described as bounded on the south by the Cosumnes river, east by a grain field of plaintiffs, which lies between said tract and a ranch known as "McConnell's ranch," on the north by uninclosed lands, and on the west by lands occupied by defendants, in all about one hundred and sixty acres, more or less, "holding and claiming the same as in fee simple;" that while plaintiffs so possessed and held the tract, defend-

ants drove one thousand of their cattle, horses, etc., upon it, and by means thereof the grass and herbage were trampled down, consumed and destroyed, and the soil torn up, subverted and spoiled. Prayer for $1,000 damages.

The answer contained a general denial, and averments that before the alleged trespass plaintiffs had abandoned and quit the possession of the premises; that before and at the time of the alleged trespass defendants were owners in fee simple of the undivided half of the land, and in quiet and peaceable possession thereof; and that they committed the alleged trespass by leave and license from plaintiffs.

The facts are, that plaintiffs were for several years in the possession of a large tract of land on the Cosumnes river, in Sacramento county, part of which is known as the "Murphy grant," called in the Mexican grant rancho "Carzadores." When they first entered, and for some time after, they held by possession only, without title under the grant; but subsequently they purchased an interest in a portion of the grant, including the premises in controversy; and defendants also purchased an undivided half of said portion, as will appear when the deeds are referred to. The parties were neighbors, and agreed to divide the land held and claimed by them respectively, and employed a surveyor to run a division line. The surveyor run the line and marked it out, and it was agreed between the parties that plaintiffs should have their share of the land by taking the tract lying east of this division line, and the defendants their share in that portion lying west of it; and plaintiffs went on and built a fence near and parallel to this division line, leaving room for a road between the fence and the line. Soon after, defendants turned their cattle into the field west of the division line, though when plaintiffs learned that defendants were turning their cattle in, they attempted to drive them back and keep them out.

On the trial, plaintiffs proved their actual possession and the alleged trespass by defendants, with the amount of damage, and that they had their horses and calves running in the field in question until April 12th, when defendants entered; and then rested. Defendants then first proved the agreement as to the division line and the survey

Woodbeck & Matter *v.* Wilders.

thereof, and also that after this survey one of the plaintiffs stated that he had made a division of the land, and that the west side of the line belonged to defendants, and that the plaintiffs had the Murphy title ; and then offered in evidence a deed from Martin Murphy and wife to James Murphy, dated September 4th, 1850, of the undivided half of the "rancho de las Carzadores," and a deed from Martin Murphy to Ingoldsbe and others, dated May 28th, 1850, of an undivided half of said rancho.     This second deed was objected to by plaintiffs on technical grounds, as to proof of execution, etc., and ruled out.     Defendants then offered a deed, dated August 7th, 1851, from Ingoldsbe and others—the grantees in the second deed above—to plaintiffs, of a tract of land containing about two thousand acres, the deed particularly describing the tract, and stating it to be a part of Murphy's old rancho on the Cosumnes river.     Plaintiffs took the same objections to this deed as to the preceding one, and it was ruled out, defendants excepting.     Defendants then put in evidence a deed, dated June 25th, 1857, from James Murphy and wife to one of the defendants, of an undivided half of the rancho Carzadores.

When plaintiffs were proving their damage, they asked a witness : " What would have been the injury to the land by turning in two hundred head of cattle on the twelfth, thirteenth and fourteenth of April, and letting them remain six or seven days ?"     Objected to by defendants on the ground that this was a question for the jury. Overruled, and exceptions.     Answer: " I think there are about two hundred and twenty-five acres in the field, and about one-fifth or sixth part is wet and the remainder dry land.     I think it would injure the wet land to turn cattle on it to the amount of one hundred dollars."     Question : " What would it be worth to turn into the field spoken of two hundred or three hundred head of cattle and pasture them six or seven days ?"     Objected to by defendants on the ground that the witness is not shown to have sufficient knowledge of the facts to testify as to this point, and also that it is a question for the jury and is irrelevant.     Overruled, and exceptions. Answer : " I should think that the field for a season would be worth three hundred dollars, and that two hundred or three hundred head of cattle would get it off in ten days."

The Court charged the jury in effect that plaintiffs and defendants were not tenants in common of the land in controversy, but held adversely to each other, and hence that the possession of the one was not the possession of the other; that the real question was, whether defendants had a right to enter upon and turn their cattle into the premises by virtue of. the agreement relative to a division line; that the joint proprietors of land may meet together and set-tle a common boundary, and when the boundary is so settled, and possession taken of his portion by each party, neither can afterwards rescind, and that such settlement or agreement need not be in writing; but that if neither party takes possession, and the agreement is not carried into effect at the time, then either party can rescind it; that, in this case, if, before defendants entered into possession under the agreement fixing the division line, plaintiffs notified them that they would ·not carry it out, and that they (plaintiffs) continued in possession up to the time defendants turned their cattle in, then defendants are trespassers, the plaintiffs having the legal right to change their mind and repudiate their verbal agreement unless defendants, at the time it was made and the line fixed, took possession of the part assigned· to them, in which case defendants are not trespassers.

To this charge defendants excepted, and asked the Court to instruct the jury, that if they believed from the evidence the parties were joint owners of the premises, whether as tenants in common or otherwise, then plaintiffs cannot maintain this action, as both parties have an equal right to the possession.    Refused.

Verdict for plaintiffs, two hundred and fifty dollars; defendants appeal.

*E. B. Crocker,* for Appellants.

1. The Court below erred in ruling that plaintiffs could rely upon their prior possession, and that defendants could not show that the parties held under a common title; also in charging the jury that the plaintiffs held adversely to defendants.    (Adams' Ejectment, 46 and 47, note; *Feimster* v. *McRorie,* 1 Jones, [Law N. C.] 547; *Gay* v. *Moffitt,* 2 Bibb, 506; *Brandt* v. *Ogden,* 1 Johns. 157; *Ellis* v. *Jeans,* 7 Cal. 409.)    Both parties were purchasers under the Murphy title.

The question whether the parties held adversely or not, or whether they were tenants in common or not, should have been left to the jury.   Even though the exclusive occupation of the field, prior to the division, might raise the presumption—and it would be but a presumption—that plaintiffs held adversely to all others, yet the acts of the parties in dividing the land, building the division fence, and their admissions as to their title, and the deeds, rebutted that presumption, and raised the counter presumption that they held in common.   At any rate, it was a question for the jury. (2 A. K. Marsh, 515 ; 2 Watts & Serg. 182.)   The sole occupation by a cotenant of the entire property is not an ouster or an adverse holding, nor is it evidence from which they can be inferred. (4 Dev. 290 ; 5 Wheat. 116.)

Defendants had the right to prove the plaintiffs' title under Murphy, and that would at least have made a *prima facie* case ; then plaintiffs might, if they could, attack the Murphy title, and show that they acquired no title by their deed under Murphy, and that they were induced to purchase by fraud, etc.    But defendants had a clear right to prove the fact by the deeds.   Plaintiffs not only claimed under the Murphy title, but they recognized us as tenants in common by dividing the land with us.   ( *Whitesides* v. *Jackson*, 1 Wend. 418 ; *Jackson* v. *Moncrief*, 5 Id. 26.)

2. The deeds in evidence, as well as the admissions of plaintiffs, showed that the parties were tenants in common of the premises, and that there had been a parol partition, and therefore trespass will not lie.   (4 Johns. 230 ; 4 Cow. 587 ; 9 Wend. 65 ; 9 Cal. 600 ; Smith's Leading Cases, 565, 566 ; *McMahon* v. *McMahon*, 13 Penn. 576 ; *Jackson* v. *Harden*, 4 Johns. 202.)

3. Some of the witnesses were permitted to give their estimate of the damages.   This is erroneous, as witnesses must state facts, and the jury determine therefrom the amount of damages.   (*Jarvis* v. *Fountain Water Co.*, July T. 1855 ; 3 Cal. 55 ; 4 Id. 11.)

*Robinson, Beatty & Heacock*, for Respondents.

1. Plaintiffs relied exclusively on their possession ; and defendants could not be permitted to show that plaintiffs held under the Carzadores grant.

Woodbeck & Matter *v.* Wilders.

Besides, there is nothing in the record to connect Martin Murphy with the Carzadores grant, or to show that he ever had possession of the land in dispute ; and hence no title could be shown in Ingoldsbe and others or their grantees.   The deeds offered by defendants were blank paper in effect.   They showed no title in any one, because they did not come from any source of title.   Plaintiffs being in possession, their purchase from Ingoldsbe and others may have been to buy peace ; it was no evidence that they recognized the title of the grantors.   Ingoldsbe *et al.* may have held one-half the grant from Murphy, the other half from another person.   So that there was no evidence tending to show a tenancy in common, or joint tenancy, between plaintiffs and defendants, and the Court below correctly ruled that they held adversely.   The true rule as to holding under common title and purchasing outstanding title is laid down in *Jackson ex dem. Preston* v. *Smith,* 13 Johns. 406.

2. The parol agreement to divide the land was not carried into effect, and plaintiffs had the right to rescind it.   (Smith's Leading Cases, 566.)

3. There was no error in allowing witnesses to give their estimate of the damages.   (1 Greenl. Ev. sec. 440.)

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

We find no error in the record.   The principal errors assigned are, the charge of the Court and its rulings, and its refusal to instruct in respect to the effect of certain deeds from Murphy to the plaintiffs and to the defendants respectively, of an undivided interest in the land sued for.   The plaintiffs offered evidence—which was not disputed—tending to show the possession and actual occupancy of the tract in controversy, by the plaintiffs.   The defendants sought to introduce these deeds for the purpose of showing that the plaintiffs and defendants were tenants in common of these premises, and therefore, that the plaintiffs could not maintain this action.   The error assigned in connection with this subject cannot be maintained, for the reason that no deraignment of title was made from its source, nor any proof to connect the holding of the parties with these deeds, or to show that possession was taken or claimed

under them.　It is true, that where the plaintiff and defendant hold under a common source of title, it is not necessary, upon a question of title, for either to go beyond that source; but the mere production of a deed from a stranger is not sufficient to show either that *he* had title, or that the grantee entered under or holds in subordination to the deed.　The deed may have been taken merely to quiet a better title or to fortify a possession already taken under a precedent and better claim.　*Prima facie* the deed, in the absence of explanation or other proof, was not relevant, or, at least, no proffer of such proof having been made, we can perceive no error in its exclusion to the injury of the defendants.

2. The Court did not err in charging that a mere unexecuted oral agreement for the division of the land according to certain boundaries was not binding on the plaintiffs.

3. Nor did it err in admitting testimony as to the extent of the injury of the defendant's cattle to the land or grass; in the manner in which the question was put and answered, this proof amounts to little, if anything, more than an estimate of the value of the pasturage or of the grass.

It is not necessary to notice the other points.

Judgment affirmed.