# CLEARY v. SHAND.

No. 2905.    Decided November 23, 1916 (161 Pac. 453).

1. DAMAGES—INJURY TO REALTY. If the thing destroyed, although a part of the realty, has a value ascertainable without reference to the value of the soil, the recovery must be for the value of the thing destroyed, and not for the difference in the value of the land before and after such destruction. (Page 643.)

2. DAMAGES—EVIDENCE—INJURY TO CROPS. In an action for destruction of growing crops, the measure of damages is their value at the time of their destruction, but in estimating them the probable yield and value of the crop, had it progressed to maturity, may be shown. (Page 643.)

3. DAMAGES—EVIDENCE—INJURY TO CROPS. Where grass or meadow has been eaten, injured, or destroyed, its value for hay or grazing purposes may be shown, and also, if the roots have been destroyed the cost of reseeding and restoring the field or meadow and the loss of the hay or pasture sustained in the meantime. (Page 643.)

4. EVIDENCE—DAMAGES—INJURY TO CROPS. In action for injury to growing crops, it was error to allow witnesses, although experienced farmers, to testify directly to the amount of damage to the crop, since such testimony might have been based upon an element of damage not authorized by law. (Page 645.)

5. APPEAL AND ERROR—REVERSAL—NECESSITY OF NEW TRIAL. In action for damage to crops, where inadmissible evidence as to plaintiff's damages is received, judgment for plaintiff will be reversed, and the case remanded, notwithstanding there is evidence which would support the verdict, since the Supreme Court will not try the case de novo on the record. (Page 645.)

Appeal from District Court, Fourth District; Hon. *A. B. Morgan,* Judge.

Action by M. J. Cleary against John Shand.

Judgment for plaintiff. Defendant appeals.

REVERSED, and remanded for new trial.

*Dilworth Woolley* for appellant.

*Harvey Cluff* for respondent.

STRAUP, C. J.

This action was brought to recover damages for trespass on plaintiff's lands. The plaintiff testified that he was the owner of about 160 acres which he had taken up as a homestead and desert entry at Soldier's Summit, and that on the 24th of September, 1914, the defendant, without his consent, drove about 2,500 or 3,000 head of sheep thereon and pastured and kept them there for about four hours. He had about three acres in rye sown the 1st of August, which was up several inches, and about 1½ acres of clover up about six inches; twenty or twenty-five acres in rye and timothy up about an inch; a patch of about five acres in rye and timothy from which he had made hay for several years; a small patch in wheat and other patches cleared of sagebrush and in wild grass suitable for pasture; and a meadow of about ten acres.

But little, if any, injury was done, as the plaintiff testified, to the wild grass or the meadow. The principal injury was done to the growing crops, the rye, timothy, clover, and wheat, which, as the plaintiff testified, were "cleaned off," leaving the roots unprotected for the next year's growth and crop, and by tramping up the ground. After so testifying to the condition of his land before and after the trespass, and that the verdure eaten and destroyed had no present value, either as pasture or hay, and was valuable only as a protection for the next year's crop, the plaintiff by his counsel was asked: ·

"What in your judgment, were you damaged by those sheep crossing over your premises at that time?"

This was objected to by the defendant on the ground, among others, that the question called for a conclusion respecting the ultimate fact or issue which was within the province of the jury, and not the witness. The objection was overruled, and the witness answered:

"I would judge the damage would be $500. I wouldn't have had the damage done for $500, as I was proving up on

the land at the time; I wanted it in the best condition possible for the special agent to examine."

Another witness for the plaintiff testified that he planted plaintiff's land to rye and timothy and some wheat, and knew the condition of his land before and after the trespass, with respect to which his testimony is similar to that of the plaintiff. Then he also was asked by plaintiff's counsel:

"Q. What, in your judgment, was the damage done to Mr. Cleary's farm there by those sheep?"

Over a similar objection as heretofore mentioned the witness was permitted to answer:

"Well, to the cultivated land and range I would judge in my estimation it would be about $350."

On cross-examination he testified:

"The damages that I placed at $350 would be covered by the clover and the rye that was eaten off and tramped out, and by the feed that was destroyed. I would judge there was about $150 damage done to the rye, about seven acres, about $100 to the clover, and about $100 to the grass. * * * I don't say that the rye as it stood on the 24th of September was worth $150 nor the clover $100, but only as a protection to the roots and the prospects for the next year's crop."

A verdict was rendered for the plaintiff assessing his damages at $150. The defendant appeals. The only question presented concerns the rulings permitted the witnesses to testify as to the amount of the damages. They were farmers, and were shown to have had experience in dry farming. No point is made respecting their qualifications. The point made is that, while the witnesses properly could have testified as to the conditions before and after the trespass, the extent and character of injury to the crops, grass, and land and as to loss and values, etc., nevertheless, they could not be permitted to fix or testify to the amount of damages without invading the province of the jury. The question is one concerning which much has been said by courts and text-writers, and a contrariety of opinions expressed and conclusions reached. There nevertheless is a common ground upon which they agree, which is that, as a general rule, to draw conclusions from the evidence as to the amount of damages is the province

of the jury, and for such reason opinions directly fixing the amount of damages are usually inadmissible.   2 Elliott on Ev., section 1098; Jones, Blue Book on Ev., section 380; 5 Ency. of Ev. p. 686.   But some courts have made exceptions to the general rule; and it is with reference to these that the disagreements arise.   One of them is that, when the amount of damages is entirely dependent upon a question of value, many courts in different jurisdictions have permitted qualified witnesses to give their direct opinion as to the amount of damages.   5 Ency. of Evidence, 686.   Instances of these are in cases of damages in condemnation proceedings where in some jurisdictions qualified witnesses, instead of expressing opinions as to the value of the property before and after the taking or condemnation, are permitted to give their opinion as to a direct or fixed amount of damage.   Such a rule is favored and is stated to be the weight of authority by Lewis on Eminent Domain (2d Ed.) vol. 2, section 655, Rogers, Expert Testimony (2d Ed.), section 154, and Jones on Ev. (Blue Book), and is stated by them to prevail in about twenty jurisdictions, and opposed in about thirteen.   Another exception as stated by some courts to the general rule, and where witnesses may give direct opinions as to the amount of damages, is in cases where the witness had the means of personal observation, but the facts and circumstances which lead his mind to the conclusion are incapable of being detailed and described so as to enable any one but the observer himself, to form an intelligent conclusion from them.   *Bishop* v. *Readsboro Mfg. Chair Co.*, 85 Vt. 141, 81 Atl. 454, 36 L. R. A. (N. S.) 1171, Ann. Cas. 1914B, 1163; *Kunst* v. *City of Grafton*, 67 W. Va. 20, 67 S. E. 74, 26 L. R. A. (N. S.) 1201; 1 Elliott on Ev. section 675.

Though we were inclined to follow the rule stated in the first exception, yet are we of the opinion that the case is not within it, for the question of damages here was not wholly dependent upon a question of value; that is, though value as to some things was an important factor, yet the amount of damages was not determinable by ascertaining what 1, 2, 3 was the value of the land or of the crops before and after the trespass.   Where the destruction is a permanent injury to the land, it may be that damages may be measured and

ascertained by showing the value of the land before and after the destruction. But no claim is made that any permanent injury was done to the land. If the thing destroyed, although it is a part of the realty, has a value which can be measured and ascertained without reference to the value of the soil in which it stands, or out of which it grows, the recovery must be for the value of the thing destroyed, and not for the difference in the value of the land before and after such destruction. 13 Cyc. 155. So, in an action for growing crops, the measure of damages is their value at the time of their destruction. But in estimating them the probable yield and value of the crop, had it progressed to maturity, may be shown. And where grass or meadow has been eaten, injured or destroyed, its value for hay or grazing purposes may be shown, and, if the roots have been destroyed, the cost of reseeding and restoring the field or meadow, and the value of the loss of hay or pasture sustained in the meantime. 13 Cyc. 209.

Nor do we think the case falls within the other exception. Witnesses could, as they did, describe the conditions of the crops and grass before and after the trespass, the destruction or injury done, and the character and extent of it. Qualified witnesses could have expressed their opinions as to the effect sheep, partially or wholly eating off and tramping over growing wheat or rye or timothy an inch or more high, or clover six inches high, or pasturing and roaming on and over the wild grass or meadow, had on such growing crops, grass, and meadow, and what the probable yield would have been had the crops progressed to maturity, and the reasonable value thereof, and of the wild grass and meadow for hay and pasture. We thus see no difficulty in laying before the jury the primary facts and letting them, instead of the witnesses, fix the amount of damages. The case of *Pacific Live Stock Co.* v. *Murray,* 45 Or. 103, 76 Pac. 1079, is directly in point supporting such view. The case of *Roseborough* v. *Whittington,* 15 Idaho, 100, 96 Pac. 437, makes against it. But in the former the point was specifically noticed and discussed, while in the latter it was not. We see no real support to respondent's contentions from the cases noted in *Baltimore Belt R. R. Co.* v.

*Sattler,* 100 Md. 306, 59 Atl. 654, 3 Ann. Cas. 667, for nearly all of them relate to damages in condemnation proceedings and are from jurisdictions where in such cases witnesses may directly testify to the amount of damages or where the question of damage was wholly dependent upon a question of value. And to that effect are most of the cases cited by the respondent.

We thus are of the opinion that the court erred in the rulings. The vice of such questions is not only to permit the witness to invade the province of the jury, but also that he, in answering them, may adopt a rule, or consider an element of damage beyond the legal measure, just as did the plaintiff when he answered that he, in proving up his homestead, wanted his land in the best possible condition for the inspection and examination of the government agent; an element certainly not of general damage, and, if at all proper, required an allegation of special damage of which there was none. We do not take kindly to the views expressed by some courts that, if the witness, in fixing the amount of damage in such case, adopts or considers an element beyond the legal measure, the matter may be taken care of on cross-examination. The . competency of direct testimony should not be made to depend upon the ability or skill of the cross-examiner to weed out the improper from the proper elements considered by the witness. It is ·weight, but not competency, of evidence which may thus be tested.

It is also urged upon us that the jury, by the amount of verdict rendered, were not ''overinfluenced'' by the expressed opinions of the witnesses as to the amount of damages, and, since the verdict is well supported by evidence, the judgment should be affirmed. Such an argument but leads to this: A trial *de novo* by us on the record and our conclusion that on the evidence a verdict of $150 is about the right thing. Finding that a verdict is sufficiently or even well supported by evidence does not cure all the mischief wrought by a mistrial in which the verdict was rendered. Were that so, then all erroneous rulings and defects on a mistrial should be disregarded, if the verdict rendered is sufficiently or well supported by evidence. Then as to the

amount of damages we have nothing except the expressed opinions of the witnesses, nothing as to the probable yield of the crops had they progressed to maturity, and nothing as to the value of them, nor as to the value of the pasture and meadow for hay or grazing purposes; if the roots of the clover, timothy and grass were destroyed, nothing as to the cost of reseeding and restoring them; and, if the meadow or other lands were injured by the sheep roaming and tramping over them, nothing as to the cost of restoring those. In the rendition of their verdict the jury may have considered only these elements and others proper to be considered; and they might, as the witnesses in fixing the damages might, have considered elements wholly beyond the legal measure, and thus held the defendant liable for something which the law does not, or the verdict may be a compromise influenced by a wrong rule of value or measure of liability. Thus to affirm the judgment but means that we shall say, not that the amount of verdict rendered was the only reasonable and permissible verdict, but was the proper amount which in our judgment on the evidence ought to have been rendered. We are not such triers of fact.

Therefore let the judgment be reversed, and the case remanded for a new trial, with costs to the appellant.

FRICK and McCARTY, JJ., concur.