[Civ. No. 3271. Third Appellate District.—June 17, 1927.]

MILLER & LUX INCORPORATED (a Corporation), Respondent, v. J. PINELLI et al., Appellants.

Edward Bickmore and R. R. Sischo for Appellants.

J. E. Woolley and Vincent J. McGovern for Respondent.

THOMPSON, J., *pro tem.*—In this suit for injunction plaintiff recovered a judgment restraining defendants from permitting their stock to trespass upon his land, and awarding him damages in the sum of $1,000. From this award of damages alone the defendants have appealed, claiming that the findings, in this respect, are not supported by the evidence.

During the years of 1922 and 1923 defendants owned a stock ranch in Merced County, consisting of 640 acres of land, which was entirely surrounded by grazing land belonging to plaintiff, known as the Los Banos farm. The ranches of the respective parties hereto were separated by wire fences. During the years mentioned the feed for stock was scarce. Defendants owned some 110 head of cattle

and horses. In spite of the fence-riders who patrolled the lines of plaintiff's land, the fence wires were frequently found cut, and the stock of defendants were found straying upon the land of plaintiffs, where the hay and grass was trampled down, eaten, and destroyed to a considerable extent. Upon the trial plaintiff was granted an injunction restraining defendants from permitting their stock to trespass upon his land, and $1,000 damages for loss of hay and feed was also awarded to plaintiff. The findings of the trial court supporting this award were as follows:

"The defendants above named caused certain animals belonging to them to run and trespass on the lands of plaintiff . . . which animals ate up, injured and destroyed the hay, grass and verdure being and growing thereon, to the damage of plaintiff in the sum of One Thousand Dollars. The amount which will compensate plaintiff for the detriment proximately caused by said animals so running and trespassing on said lands of plaintiff is said One Thousand Dollars. . . . "

Appellants contend that these findings are not supported by the evidence; that there is absolutely no evidence of the quantity, or value of the hay, grass, or verdure which was eaten or destroyed by their stock, and that the only evidence of pecuniary damages sustained, was remote, uncertain, and speculative. It is further contended by the defendants that this testimony of estimated damages was erroneously admitted over their objections on the grounds that it was incompetent, irrelevant, and immaterial, and that it was admitted without requiring a proper foundation for such testimony to be first proved.

Only two witnesses testified to the amount of damages. The first one was Mr. Mulkey, who testified that he had been a rancher for thirty years, and was formerly the superintendent of the Los Banos farm, and as such had charge of the grazing lands involved in this action. He said that during the years of 1922 and 1923 he had seen the stock of defendants on the Miller & Lux premises, "many times—almost every day for about two years," that he was acquainted with the land upon which the cattle trespassed, and was "familiar with the cost of feed." The evidence of this witness respecting the damage sustained to the growing hay and grass was as follows: "Q. From

your experience in this business, as you have related, what do you think was the market value of the growing grass destroyed each year by the defendants' cattle? . . . Mr. Bickmore: We object on the ground it is incompetent, irrelevant and immaterial, and object further that there is no proper foundation laid. The Court: Q. Now, what would you say would be the reasonable value, market value, that these cattle are alleged to have destroyed? A. It would be in the neighborhood of $1000 a year. . . . Q. I am asking you if you made any examination to see how much grass these cattle had eaten? A. Yes, sir. . . . Q. Upon what do you base your estimate of the damage, now, that was done there, how do you calculate that? A. Well, I know what feed will grow on that land, and I know what was there, and I know how much of it that Miller & Lux got. . . . Q. What did you see? A. I saw the land was trampled and the feed ate off the pasture land. Q. About how many acres were there, about what would you say was the pasture land or wild land these cattle were on? A. That (which) they damaged, was about 240 or 250 acres. . . . They were on the pasture land and farming land long enough to get all the feed they lived on. . . . They had no feed anywhere else. . . . Q. You say that you estimate this damage that these cattle did to be the sum of $1000. A. On the pasture and farming land. Q. How would you . . . itemize it, in what way was the damage? A. It would be about $300 on the pasture land, and the balance would be on the farming land. . . . Q. And 260 acres? A. On the pasture land. . . . Q. Could you say what proportion these cattle ate up on that? A. Two-thirds of it. Q. And did Miller & Lux have any cattle on that land during that time? A. A very few head at that time, in that small field, it was used mostly for work horses from the Ortigalita Ranch. Q. You turned the work horses out on it? A. Saturday nights, as a rule, we had to feed them hay, then, as there was no feed for them. Q. You go over to the cultivated land, you estimate $700 damages, now, what is the nature of that damage? A. It was a grain field and they trampled it all up and ate the grain off of it. Q. How many acres did they have? A. Something over one section. . . . Sometimes I would see about thirty head of stock on there, . . . and sometimes I would see about eighty cattle and thirty

horses. . . . Sometimes we cut over some of (that land) . . . but not in the immediate vicinity of Fava and Pinelli's place; they ate it off and there was nothing there to cut. . . . At that time the pasture there was two dollars per month, for the same kind of pasture, . . . I was renting the same kind of land for $8 an acre a year. . . . The standard market value, at that time, was seven or eight dollars an acre.''

Likewise, the witness Simmons testified that he had been engaged in the stock business for twenty-nine years; that he was employed by plaintiff during the years of the alleged trespass, and knew the land in question, the value of pasturage and the cost of feed. He was then asked: ''What would you say was the market value of the feed destroyed by the defendant's cattle during the year 1924?'' The same objection on the part of defendants above mentioned was made to this question and overruled. The witness then answered, ''Approximately $1,000.00, I would say. Q. How much per head was feed worth during the year 1924? A. Around $2.00. The Court: Q. I suppose you have had occasion to buy feed. A. Yes, sir. Q. For stock, during that time? A. Yes, sir. Q. Have you had occasion both to feed stock upon the premises and also to run them on grazing land? A. I have. Q. For how many years? A. For a little better than five years for Miller & Lux. (Mr. Bickmore: I am not objecting to the man's qualifications, no doubt he is properly qualified. . . . ) Q. That the land of this nature, how much per head, per month would it cost to feed on that kind of land, during the year 1924? A. I don't think that you could get that kind of land . . . during the year 1924 to graze cattle for less than two and a half dollars an acre, per head, per month. . . . It was a very poor year, a poor and bad year.''

Two questions are presented on this appeal: (1) Is the rental value of pasture land a proper measure of damages for the destruction of grass, caused by trespassing stock? (2) Is it reversible error to admit testimony of the gross amount of estimated damages, where such evidence is subsequently supplemented by competent testimony of all necessary facts upon which the court can compute the damages?

There can be no question that the owner of pasture land will be entitled to be reimbursed for all damages incurred by the trespassing of stock. ''For the breach of an obligation not arising from contract, the measure of damages, . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.'' (Civ. Code, sec. 3333.)

The customary method of estimating the value of pasturage in a stock country is to determine the number of head of stock per acre which the ordinary natural growth of grass will sustain. Well-considered cases have held that it is a reasonable rule to estimate damages for the use or destruction of pasturage, from evidence of the reasonable rental value of such grazing land per month or season, per acre, according to the number of head of stock to be pastured thereon. ■ There is a clear distinction beween the value of the use of grazing land for pasturage, under which circumstances the grass-roots remain in the soil, and from the natural reseeding of which a volunteer perennial crop is reproduced successively, and the measure of damages resulting from the destruction of such crops as vegetables and grain which require annual planting, cultivation, harvesting, and marketing. Verdure used for grazing purposes cannot be cut, stacked, and marketed by the ton or bale. It has no such market value. It is essentially a part of the realty. As the stock consumes the grass, the shoots spring up repeatedly, and the crop is thus renewed. One may estimate with reasonable accuracy the number of bushels of corn or grain, or the number of pounds, bushels, or crates of vegetables which may be produced per acre, but it is absurd to talk of measuring the market value of mere pasturage in this same fashion. ■ With relation to such crops of fruit, vegetables, and grains there is no question as to the reasonableness of the well-settled rule which requires the ascertaining of the measure of damages from the market value of the estimated crop, taking into consideration the condition of maturity of the product at the time of the injury complained of. (4 Sutherland on Damages, 3d ed., 2997, sec. 1023; 17 C. J. 891; *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209 [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942]; *Seid Pak Sing* v. *Barker*, 197 Cal. 321 [240 Pac. 765].) Any other basis

is too speculative and uncertain. (*Western B. & S. Co.* v. *Jvone,* 179 Ill. 71 [53 N. E. 565]; *Westlock* v. *Noonan,* 108 N. Y. 179 [2 Am. St. Rep. 405, 15 N. E. 67]; *Eno* v. *Christ,* 25 Misc. Rep. 24 [54 N. Y. Supp. 400].)

But with respect to the market value of pasturage a different rule prevails. In *Hanson* v. *Seawell,* 35 Idaho, 92 [204 Pac. 660], it is said: "Ordinarily the rental value of the land would not be proof of the value of the crops. However, where it is shown, as in the present case, that the land was used for pasture, and that this was the use to which it would ordinarily and reasonably be put, proof of its rental value as pasture is a proper method of showing the value of the grass. In fact it seems to be the only method which could be adopted." (*Boggs* v. *Seawell,* 35 Idaho, 132 [205 Pac. 262]; *Kellar* v. *Sproat,* 35 Idaho, 273 [205 Pac. 894].) In the last case cited the value of the pasturage was estimated at $15 per head per season.

"Where the trespass suspends or impairs the enjoyment of the premises compensation may be given on the basis of the rental value in the absence of any ground for special damages, or in addition to such damages." (4 Sutherland on Damages, p. 2966, sec. 1015.) In 26 R. C. L. 972, section 50, the court says: "For the destruction of pasture by flood, evidence of the value of the pasturage destroyed is at least *prima facie* evidence of the damage to the plaintiff." And in the case of *Buttles* v. *Chicago, Santa Fe & California Ry. Co.,* 43 Mo. App. 280, in which an action was brought for damages for the loss of a growing crop of grass trampled down and consumed by trespassing stock, the court says: "The plaintiff sought to prove the value of his grass by showing what the pasturage was reasonably worth . . . The law aims at compensation, and we can conceive of no other way that would be more satisfactory or fair. In explanation of the value placed on the pasture for the time, the witnesses stated how many head of cattle could be grazed on the land during the time, and what it was worth per month. If the damage had been done to a crop of growing corn, then the authorities relied on by the defendant would be applicable. It was held in those cases that the land-owner ought not to recover the full value of a growing crop of corn or like crops, as if it was fully matured and gathered; that, in arriving at its true value at

the time of its destruction, the cost of additional cultivation (if any was needed), and the expense of gathering and fitting for market should be considered. This would be equitable and right. But anyone with the slightest knowledge on the subject knows that such a rule is entirely inapplicable, when the court is seeking to ascertain the correct value of grasses intended for grazing purposes."

Where the roots of the grass in a pasture have been destroyed by water or fire so as to prevent the matured stocks from automatically reseeding the field, the measure of damages includes not only the rental value of the pasture, but also the additional cost of reseeding the field. (4 Sutherland on Damages, 3001, sec. 1023; *Chapple* v. *St. Louis H. & R. Co.* (Mo. App.), 284 S. W. 863; *Couch* v. *Kansas City So. Ry. Co.*, 252 Mo. 34 [158 S. W. 347]; *Crouch* v. *Kansas City So. Ry. Co.*, 141 Mo. App. 256 [124 S. W. 1077].) "Where the land has been appropriated to a particular use, as by converting it into a meadow . . . in measuring the loss, a distinction must be drawn between those things which can readily be replaced, and those things concerning which restoration is impossible. As to the former, the cost of reproduction is regarded as the proper basis of computation; while as to the latter, the rental value must be taken as a basis. It is to be remembered, however, that the term 'rental value' as applied to lands covered with a growing crop, means, not what the land may be rented for in the vicinity for ordinary purposes, but the value of the use of the land for the purpose of maturing and harvesting the crop." (*Blunck* v. *Chicago & N. W. Ry. Co.*, 142 Iowa, 157 [120 N. W. 741].)

The appellant in the instant case relies chiefly for reversal upon the cases of *Cox* v. *Crane Creek Sheep Co.*, 34 Idaho, 327 [200 Pac. 678], *Cleary* v. *Shand*, 48 Utah, 640 [161 Pac. 452], *Pacific Live Stock Co.* v. *Murray*, 45 Or. 103 [76 Pac. 1079], and *Fremont* v. *Marley*, 25 Neb. 138 [13 Am. St. Rep. 482, 40 N. W. 948]. None of these cases hold that the reasonable rental value of pasture land is not the proper measure of damages for the destruction of the grass growing thereon. But these cases do quite properly announce the rule that such damages could not be established by the mere conclusion of a witness as to a lump sum which he estimates as damages, without giving

the facts upon which his conclusion is based. In the Cox case, it is said: "They (the witnesses) were permitted to testify to lump sums without stating any facts upon which such estimates were based. . . . The jury was not informed what was the condition of the pasturage before the sheep grazed over it, nor the extent of the territory grazed over, nor the reasonable value of such pasture at that time and place." In the case of *Cleary* v. *Shand,* above cited, damages were awarded for trespass in driving some 2,500 sheep over plaintiff's land to the damage of his rye and timothy hay which was planted there. The sheep remained on the pasture only about four hours. In that case it was held to be error for the witness to be permitted to testify, as follows: "I would judge the damage would be about $500" on account of the sheep crossing the premises. And again, "The damages that I place at $350 would be covered by the clover and rye that was eaten off and tramped out, I would judge," etc. There was no attempt to show the reasonable rental value of the pasture land.

In the case of *Pacific Live Stock Co.* v. *Murray,* 45 Or. 103 [76 Pac. 1079], the only witness who testified as to the damages incurred on account of trespassing sheep on an uninclosed pasture, said: "Well, it would be owing to the way— If I owned it, I would not have had them on there for seven or eight hundred dollars." The court properly said: "A witness may state facts upon which the damages are predicated, and in a proper case, if qualified, may give his opinion upon a question of value, when material; but he cannot express an opinion as to the amount of damages . . . because that is exclusively within the province of the jury." But the court also used this significant language in that case: "It would have been competent for a qualified witness to give his opinion as to the value of the grass or pasturage eaten or destroyed. *Woodbeck & Matter* v. *Wilders,* 18 Cal. 131; *Lommeland* v. *St. Paul, Minn. & Man. Ry. Co.,* 35 Minn. 412 [29 N. W. 119]."

And in the *Fremont* v. *Marley* case, above cited, where plaintiff sought damages for the destruction of his crops caused by an overflow of the land because of water ditches which were constructed and maintained by the defendant, the court announced the same general rule above mentioned, and properly concluded that: "A witness who possesses the

requisite knowledge may testify as to the value of the crops destroyed, . . . but he cannot be permitted to testify directly as to the amount of damages sustained." In this case there was no effort to prove the reasonable value of the pasturage.

We are cited to no authority which directly holds that it is not competent to prove the damages sustained to pasture land by showing the reasonable rental value thereof. ■ Upon the foregoing authorities, and upon good reason, we conclude that the measure of damages for the appropriation or destruction of pasturage, which is used for grazing purposes, where the grass cannot be reasonably severed and marketed separate from the land, is the reasonable rental value thereof in that vicinity for pasture purposes.

■ In the instant case, over the objection of defendants, two witnesses were permitted to testify as to their estimate of the gross amount of damages to the growing crops, on account of the trespass of defendant's stock, without first stating the facts upon which the court could calculate such damages. In substance these questions were: "What is the market value of the growing grass which was destroyed by defendant's cattle?" The objection upon the grounds that this question was incompetent, irrelevant, and immaterial, and that no foundation for such testimony had been laid, was overruled. The witnesses then answered: "Approximately $1000." These answers were, of course, a mere conclusion and were speculative. Direct opinions of witnesses as to the amount of damages are generally inadmissible, in the absence of evidence of facts upon which such conclusions are based. (3 Jones Commentaries on Evidence 2502, sec. 1367; 22 C. J. 204, sec. 598; 4 Ency. of Ev. 12; *Cox* v. *Crane Creek Sheep Co.*, 34 Idaho, 327 [200 Pac. 678]; *Cleary* v. *Shand*, 48 Utah, 640 [161 Pac. 453]; *Pacific Live Stock Co.* v. *Murray*, 45 Or. 103 [76 Pac. 1079]; *Fremont, etc.*, v. *Marley*, 25 Neb. 138 [13 Am. St. Rep. 482, 40 N. W. 948].)

These witnesses were, however, qualified to testify as to the value of the pasture land, being stock men with some thirty years' experience, and familiar with the land in question, and the local market rental value of grazing land. The objectionable answers were also supplemented by testi-

mony on the part of both witnesses of all necessary facts from which the court could make its own calculation as to actual damages sustained. From this evidence it appears that from 240 to 260 acres of pasture land was entirely eaten off or trampled down and destroyed; that eighty cattle and thirty horses were seen on said land "every day for about two years," and grazed there "long enough to get all the feed they lived on"; that the stock "ate it (the grass) off, and there was nothing there to cut"; that the market rental value of similar pasture land in that vicinity, at that time, was from two to two and a half dollars per head per acre for each month, or from seven to eight dollars per head, per acre for the grazing season. This leaves a mere matter of computation to ascertain the aggregate amount of damages. It is apparent that the minimum figures given would greatly exceed the aggregate amount of damages awarded by the court. The objectionable questions and answers above quoted are therefore harmless and do not constitute reversible error.

The finding of the court that the defendant's stock "ate up, injured and destroyed the hay, grass and verdure . . . to the damage of plaintiff in the sum of $1000" is amply supported by the evidence.

The judgment is therefore affirmed.

Plummer, J., and Finch, P. J., concurred.