# VINCENT v. FEDERAL LAND BANK OF BERKELEY et al.

No. 6867. Decided March 29, 1946. (167 P. 2d 279.)

See 17 C. J. S., Contracts, sec. 321; 15 Am. Jur., 256, 264.

*Christenson & Christenson,* of Provo, for appellants.

*J. C. Halbersleben,* of Provo, for respondent.

McDONOUGH, Justice.

Defendants Durrant appeal from a judgment awarding damages against them on two causes of action. On his "first cause of action" plaintiff sought a substantial recovery, but was granted only nominal damages for alleged breach of covenant to construct and maintain a division fence to the "water's edge" of Provo Bay, a portion of Utah Lake. On his "second cause of action," plaintiff was awarded damages for trespass of defendants' livestock whereby a considerable part of plaintiff's alfalfa seed crop was ruined.

The parties are adjoining landowners. The issues raised by the first cause of action result from divergent interpretations of a written agreement executed on April 27, 1903, by their predecessors in ownership, and thereafter recorded. Said agreement was obviously entered into for the purpose of settling a boundary line disagreement and also to fix responsibility for construction and maintenance of specified portions of a division fence to compose differences. The fence was built in 1903 or 1904 to a point which was then the "water's edge" of said Provo Bay.

Plaintiff takes the position that the defendants and their predecessors were required to maintain a fence to the "water's edge," irrespective of where such point might be, and regardless of how such point might be changed; that is,

pursuant to the contract the fence should be extended by defendants if and as the waters of the bay receded. Defendants on the other hand take the position that the words "water's edge" in said agreement have reference to the level of the lake as it existed at the time of execution of the contract, or, at most, to the water's edge as affected by the natural fluctuations of the lake level. It is undisputed that about the year 1936, by artifical means employed by third parties who dredged through a reef, the level of Provo Bay was considerably lowered so that the actual "water's edge" receded to the south and to the west more than a mile from the point where it existed in 1903. It is likewise conceded that such interference by third parties was beyond the control of defendants.

The following portion of the contract is the crux of the controversy:

"As a part of the consideration for the establishment of the division line as above set forth the parties of the first part [predecessors of defendants] for themselves, their heirs, executors, administrators and assigns, hereby agree to erect, and thereafter forever maintain, a good, substantial and sufficient division fence that will turn stock, the line of said fence being described as follows, to wit:

"Commencing 30.39 chains West and 4.48 chains South of the [SE corner of Sec. 10, Tp. 7 S. R. 2 E., S. L. B. & M.] *Thence due South to the water's edge of Utah Lake.*" (Emphasis added.)

Certain testimony was offered in an effort to show how the parties construed the contract by a long course of conduct with respect thereto. Plaintiff points out that in 1940 defendants built the fence beyond where it was in 1903, and they argue that defendants thereby admitted by conduct that they were obligated to construct and maintain the fence beyond the 1903 point. However, inasmuch as the fence was not maintained in good repair for a long period of time, and the defendants did nothing until about 1940 to rebuild any part thereof, it cannot be said that there was any interpretation manifested by the parties or by their predecessors in interest by a long course of conduct. While the agreement was recorded in 1903, defendants testified

that they did not know anything about the terms of the agreement, and that they constructed the fence to a point south of where it existed previously to protect their lands from encroachment. The evidence falls far short of showing that defendants or their predecessors, by any unequivocal conduct, construed the contract in accordance with the claims now made by plaintiff, nothwithstanding the written demand made in 1940.

Generally, when parties make an agreement to settle a boundary dispute, they cover only those matters in controversy and those related thereto. Appellants therefore point out that the parties did not have in mind any artificial change in the water level of the lake, and that in 1903 they could not anticipate that the natural dyke which tended to keep the level of Provo Bay above the general level of Utah Lake would be dredged in connection with some project undertaken by third parties 30 years later, as a result of which the water's edge would be more than a mile southerly from its 1903 position. There is nothing in the instrument which suggest that the parties were contracting with respect to anything other than settlement of an existing boundary dispute. The detailed language of the entire contract fails to disclose that the parties in any way anticipated that the level of the lake would subsequently be radically altered by projects undertaken in the distant future by and under the control of third parties. The terms used do not warrant any conclusion that the parties intended to contract with respect to such acts.

Agreements ordinarily must be construed in the light of problems, conditions and controversies existing at the time, not in the light of unforeseeable events not mentioned in the agreement, and not reasonably within the contemplation of the parties, unless some language ■ therein discloses a different intention. We therefore find no basis for reading into the contract after the words "water's edge," any phrase such as "wherever such point may be or however such point may be changed in the future."

We have no means of ascertaining from the evidence, whether the normal and natural changes in the level of Provo Bay from year to year, would have necessitated construction of the fence south of where it was in 1903 if such fence were to reach the water's edge; for as pointed out, the evidence indicates a radical change in the level of Provo Bay through artificial means. Furthermore, the respondent proceeded on the theory that the fence must be continued to the south with any lowering of the level of Provo Bay, irrespective of how that lowering process occurred, and even if it resulted from the acts of third parties. Such a theory is untenable in the light of the language employed by the parties and the circumstances surrounding the execution of the agreement.

The trial court therefore erred in construing the contract to require the fence to be built to a point, the location of which would depend upon acts of third parties and not upon the natural rise and recession of the level of Provo Bay. The judgment on the first cause of action must therefore be reversed.

In assailing the judgment on the second cause of action, appellants contend that there was no basis for any recovery for trespass of defendants' cattle upon the alfalfa crop of respondent. They argue that the proof shows that the cattle came onto plaintiff's land at points south of where the fence was built in 1903, and also at points north of the section of fence required to be built and maintained by defendants' predecessors. Of course, if plaintiff had been obligated to build a fence between certain points, and failed to do so, and damage to the seed crop resulted from plaintiff's own failure to perform the agreement to erect and maintain such fence, defendants would have had a valid defense. However, the evidence is not such that the court would have been required to find that defendants' cattle, came through the portion of the fence plaintiff was required to maintain.

Furthermore, no fence law is pleaded. Hence, by pleading that their cattle came onto plaintiff's land at points south of where defendants were obligated to maintain the fence, they not only failed to plead a valid defense but affirmatively pleaded liability to plaintiff. Absent any local fence law, defendants were not at liberty to turn their stock loose. They had a duty to keep their cattle from trespassing on plaintiff's property. The fact that the 1903 agreement did not require defendants to build the fence far enough to the south to reach the present water's edge of Provo Bay could not be construed as a license for defendants to allow their cattle to come onto plaintiff's land at some point south of the fence. Absent any local fence law, the trespass at the point claimed by defendants south of the end of the fence, was not excusable, and the defendants were not exempt from liability therefor. The only remaining question, therefore, is whether there was sufficient proof of damage.

We believe the proof of damage is adequate. It is true that plaintiff was not able to ascertain the yield of the entire field with accuracy. The fact that defendants' cattle came into the field and tramped out a considerable part of the seed crop, as a result of which it became impossible to determine what the yield would have been, made it proper for plaintiff as a seed grower to resort to estimates on the basis of best facts available. He took an area which was only slightly damaged, and determined the yield therefrom. He then harvested separately all of the other portions of the crop worth harvesting, and determined the deficiency in the seed. There was testimony that the harvesting expense was paid on the entire crop harvested, that the cost of harvesting a good crop is the same as for a poor crop, and that the portion of the crop not harvested at all did not enter into the computation of the seed loss. The contention that respondent failed to take into consideration costs of harvesting, is therefore not well founded. We find nothing in the case which offends the principles laid down in *Cleary* v. *Shand,* 48 Utah 640, 161

P. 453, and *Sharp* v. *Cankis Gianulakis*, 63 Utah 249, 225 P. 337.

There was no error in the award of damages for trespass, and that portion of the judgment is affirmed. However, that portion of the judgment whereby nominal damages were awarded against defendants for failure to build the fence beyond the 1903 point over to the "channel" was erroneous and must be reversed as hereinabove indicated. It is so ordered. Each party shall pay his own costs.

LARSON, C. J. and WADE and WOLFE, JJ., concur.

PRATT, J., not participating.