[Civ. No. 8485. Third Dist. Apr. 19, 1955.]

WALTER R. MURPHY, Respondent, v. NICK NIELSEN, Appellant.

Russell F. Milham and Peter Mannino for Appellant.

Blewett, Blewett, Macey & Garretson and Emmett J. Foley for Respondent.

FINLEY, J. pro tem.*—This appeal is from a judgment in favor of plaintiff in an action for damages for trespass upon real property. The only question urged by appellant in his opening brief is whether the trial court followed the correct rule in fixing the amount of damage awarded for the trespass. In his closing brief appellant also makes point of the fact that, in violation of the best evidence rule, the court permitted plaintiff, over defendant's objection, to give oral testimony concerning the terms of certain written grazing permits issued to him.

Plaintiff leased several thousand acres of grazing land in El Dorado County during the years 1948 and 1949 for the purpose of summer range for sheep. A portion of the land was leased from the federal government—the balance from private owners. The substance of the evidence offered by plaintiff regarding the trespass is that during these years from 4 to 130, and at times many more, head of defendant's cattle were seen grazing on this range. There was also testimony that cattle belonging to others than defendant were seen grazing on this leased land, but by far the major portion belonged to defendant. Plaintiff testified that during the year 1948 he paid to the lessors a total rental of $1,255, and for the year 1949 the sum of $1,345; that the grazing season was generally for a four-month period, from June 15 to September 15; that he grazed 1,666 sheep in 1948 and 1,650 sheep in 1949; and that he took his band out early in both years because the pasture was eaten off. Over objection of defense counsel, based on the best evidence rule, plaintiff was allowed to testify that under his leases in writing, he was authorized to graze a maximum of 2,000 sheep annually on the government land and 1,000 sheep annually on the privately-owned land. Although he admitted that the grass was good and of normal growth in June and July of both years, plaintiff testified that he did not graze the maximum number of sheep allowed because he did not feel that the land could hold any more. He estimated that defendant's cattle had eaten about one-fourth of the feed on the lower range, also known as the Cody Range, and stated that in both years his sheep did not reach the growth expected as he was forced to take them off early. It developed, however, that in 1949 plaintiff had gone into receivership and did not himself take the sheep out.

Defendant offered no evidence, and at the end of plaintiff's

*Assigned by Chairman of Judicial Council.

case, a motion for nonsuit was denied. The case was then submitted to the court sitting without a jury, and subsequently judgment was rendered in favor of plaintiff and against defendant in the sum of $1,152.41 plus costs. The court found that if the cattle of defendant had not trespassed upon the grazing land leased by plaintiff in the years 1948 and 1949 and destroyed the grass thereon, there would have been sufficient feed for the grazing of 3,000 sheep in each year, and that by reason of such trespass, plaintiff had been damaged in the amount of $557.61 in 1948 and $604.80 in 1949. These amounts were computed by dividing the amount of the rental paid for each year by 3,000, the quotient representing the cost per sheep per year to plaintiff under the terms of the alleged rental agreement. This figure was found by the trial court to be $.418 per head for 1948 and $.448 per head for 1949. The court then subtracted the number of sheep actually grazed during each year from 3,000 and multiplied the difference by the cost per head for that particular year. As a specific example, taking the year 1948, the court subtracted 1,666, the number of sheep actually grazed that year, from 3,000, the number allegedly permitted under the grazing leases, giving a difference of 1,334 sheep which the court concluded plaintiff was unable to graze in 1948 by reason of defendant's trespass. This difference, 1,334, was then multiplied by $.418 which would have been the actual cost per head for 1948 had plaintiff grazed the 3,000 sheep orally testified to by him as permitted under the alleged rental agreement for that year. The result, $557.61, was found to be the actual damage sustained by plaintiff on account of defendant's trespass in 1948. A similar calculation was made for 1949, but the two figures, when added together, total $1,162.41 instead of $1,152.41, which is the figure set forth in the conclusions of law and judgment, an apparent error in addition.

Appellant contends that the trial court not only failed to follow the proper rule for measuring damages to pasturage, as set forth in the case of *Miller & Lux Inc.* v. *Pinelli*, 84 Cal. App. 42 [257 P. 573], but as well applied the rule to a factual situation unwarranted and unsupported by the evidence.

Respondent replies that the court properly followed the general rule set forth in *Miller & Lux Inc.* v. *Pinelli, supra,* namely, that the measure of damages is the reasonable rental value of the pasturage destroyed by the trespass of defendant's cattle, and that although a different method of computing the reasonable rental value was used by the trial court herein, there was

no error since the method of computation necessarily depends upon the facts of the particular case.

Both parties, as well as the trial court, seemed agreed that *Miller & Lux Inc.* v. *Pinelli* outlines the rule in California for the ascertainment of damages due to the destruction of pasturage. (See also *Staub* v. *Muller,* 7 Cal.2d 221, 228 [60 P.2d 283]; *Maddalena* v. *LeDuc,* 29 Cal.App.2d 211, 212 [84 P.2d 254]; *Wolfsen* v. *Hathaway,* 32 Cal.2d 632, 644 [198 P.2d 1].) In *Miller & Lux Inc.* v. *Pinelli, supra,* plaintiff sought an injunction restraining defendants from permitting their stock to trespass upon his land and for damages for the prior trespass. Plaintiff was awarded damages in the sum of $1,000 and from that award alone the defendants appealed. On appeal the court was called upon to, and did, discuss the question: ''Is the rental value of pasture land a proper measure of damages for the destruction of grass, caused by trespassing stock?'' Therein at page 47 the court said:

''The customary method of estimating the value of pasturage in a stock country is to determine the number of head of stock per acre which the ordinary natural growth of grass will sustain. Well-considered cases have held that it is a reasonable rule to estimate damages for the use or destruction of pasturage, *from evidence of the reasonable rental value of such grazing land per month or season, per acre, according to the number of head of stock to be pastured thereon.*'' (Emphasis added.)

After noting that damages for the destruction of pasture land ''could not be established by the mere conclusion of a witness as to a lump sum which he estimates as damages, without giving the facts upon which his conclusion is based,'' the court, at page 51, concluded that:

''. . . [T]he measure of damages for the appropriation or destruction of pasturage, which is used for grazing purposes, where the grass cannot be reasonably severed and marketed separate from the land, is the reasonable rental value thereof in that vicinity for pasture purposes.''

In his opening brief appellant states that the question of the proper measure of damages is ''the only pertinent question to be resolved.'' The fact is mentioned, however, that the court, over an objection by appellant that such was not the best evidence, permitted respondent to give oral testimony concerning the provisions of the written grazing permits issued to him. (See Code Civ. Proc., § 1855.) This point is stressed with more concern in appellant's closing brief, and it

is obvious that even though in general the provisions of those permits are collateral to the issues here, where the trial court used the substance of respondent's oral testimony as one of the essential elements in fixing the amount of damages awarded we must hold that such testimony is not the best evidence, is improperly in the record and should have been stricken by the trial court. (*Wilson* v. *Atchison, T. & S. F. Ry. Co.*, 6 Cal.App.2d 735 [45 P.2d 372].) Respondent was on the stand under direct examination. Following is the question by respondent's attorney and the answer by respondent:

"By Mr. Foley: Q. And just how do you arrive at the rental value for the land that you leased from the government?

"A. Well, the only way I think I can—you see, my permit with the government entitles me to two thousand head, and I am entitled to a thousand head on private land.

"Mr. Milham: I move that be stricken from the record as not the best evidence, and I want to see it."

The court not only failed to grant appellant's motion to strike this statement on the ground that it was not the best evidence, but in addition permitted respondent's counsel, over appellant's objection, to further question respondent concerning the number of sheep he was allowed to graze under these written permits. Respondent admitted that copies of these permits were available and could be produced by him if required. ██ Copies are the best evidence next to the originals themselves, and where copies are shown to exist, and are available, it is error to allow oral evidence as to their contents. (*Ford* v. *Cunningham,* 87 Cal. 209 [25 P. 403].)

Even though the grazing permits had been introduced into evidence and the figure of 3,000 therefore properly before the court, still this would not, standing by itself, constitute proof that the range was adequate to support 3,000 sheep. On the question of range capacity the record is silent and it would not follow that because the permits authorized the grazing of 3,000 sheep for the season the feed would be adequate to sustain that number. Respondent testified to the amount of rental paid by him for the permits and he also testified that this was a reasonable rental. This he was entitled to do. There is testimony that, aside from the few cattle of other owners seen on the Cody range, the cattle of appellant consumed all of the feed thereon over and above what was eaten by the respondent's sheep.

██ We can see no error in the *method* used by the court in computing damages. The testimony is to the effect that

between respondent's sheep and appellant's cattle, plus the few cattle belonging to others, all of the feed was eaten off of the entire range. If this be true then the trial court was warranted in concluding that appellant should be charged with all pasturage over and above that consumed by respondent's sheep, giving of course whatever consideration is warranted to the testimony concerning the cattle of others on the range. This would not be altered by the fact that appellant's cattle trespassed on the Cody range alone. Had there been some proof of the maximum capacity of the total range considered as a unit, this, together with the testimony that all of the grass had been eaten off would have justified the trial court in charging appellant for so much of the grass as was not consumed by respondent's sheep and what cattle there were belonging to others. This would be so regardless of how many sheep respondent grazed for he had paid for the grass and even though he had not pastured a single sheep on it he would still be entitled to compensation for the value of all food consumed by trespassing cattle. The fact deserves mention that at one point respondent testified that appellant's cattle consumed only about one-fourth of the feed on the Cody range. But this testimony merely created a conflict to be resolved by the trier of fact.

█ It is elementary that a plaintiff must prove his case by a preponderance of the evidence. █ Here plaintiff produced competent evidence to support findings that in 1948 he paid $1,255 for and grazed 1,666 sheep, and that in 1949 he paid $1,345 for and grazed 1,650 sheep on certain ranges leased by him and that the sums paid by him as rental were reasonable; that from 4 to 130 head of appellant's cattle trespassed on the Cody range all during these seasons and that toward the end of each season the feed was gone. There is lacking the necessary proof of: (1) The reasonable value per head per season of such range land for sheep or cattle; or (2) The total number of sheep that the range would have sustained for the seasons involved so that the unit value actually paid per head of sheep per season could have been calculated; or (3) Any testimony as to the value of the feed or of the range per acre.

Inasmuch as the trial court erroneously admitted and considered parol evidence of the number of sheep permitted on the range under respondent's written permits and erroneously assumed this figure to be the measure of the total amount of feed available on the range and based its calculations and

judgment thereon, the action must be remanded for further proceedings.

The judgment is, therefore, reversed.

Van Dyke, P. J., and Schottky, J., concurred.