No. 34,763

·ARNOLD BERNS, *Appellee*, v. STANDISH PIPE LINE COMPANY, *Appellant*.

(105 P 2d 893)

Opinion filed October 5, 1940.

*Harold M. Hauser,* of Marion, *Rayburn L. Foster* and *Ed Waite Clark,* both of Bartlesville, Okla., for the appellant.

*D. M. Ward,* of Peabody, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This action was to recover damages for breach of contract. From a judgment in favor of plaintiff, defendant appeals.

In the year 1931 the plaintiff, Arnold Berns, joined by his wife, entered into three written agreements with the Independent Pipe Line Company granting right-of-way easements for the laying and maintenance of a pipe line across four tracts of land situated in four sections and embracing 1,280 acres. The contracts were identical in form, except as to the land described, and granted to the pipe-line company "the right to lay, maintain, inspect, alter, repair, operate, remove and relay a pipe line, or pipe lines, for the transportation of oil and gas and products and by-products thereof, water and other substances, and such drips, valves, fittings, meters and other equipment and appurtenances as may be necessary or convenient for such operations, over, through, upon, under and across the following described land [description of land] together with the rights of ingress and egress to and from said line or lines, or any of them, for the purpose aforesaid. Grantor to have the right to fully use and enjoy the above-described premises, except as to the rights hereinbefore granted; and grantee hereby agrees to pay any damages which may arise to crops, pasturage, fences or buildings of said grantor from the exercise of the rights herein granted, said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by the grantor, one by the grantee, and the third by the two so appointed, and their written determination of amount to be final and conclusive.

"Should more than one pipe line be laid under this grant, at any time, an additional consideration equal to the consideration hereinabove recited shall be paid for each line so laid after the first line.

"Grantee shall bury pipe lines below plow depth."

The consideration for three contracts was $556.35.

Thereafter these right-of-way contracts were assigned and transferred to the defendant in this action. In 1937 the defendant constructed an additional pipe line through the right of way, and paid the plaintiff the stipulated consideration therefor. The plaintiff signed a receipt which contained the following clause:

"As in the original right-of-way contract provided, pipe-line company agrees to pay any damages which may arise to crops, pasture, fences, or buildings from the exercise of the rights granted."

Plaintiff in his amended petition set up the right-of-way contracts, and alleged damages arising from the construction of the second pipe line, as follows:

"8. That plaintiff claims damages of defendant arises from construction of said second pipe line, not included in roddage, for the following reasons and amounts given herein, viz.:

"(a) damages to pasturage, the business of and for which the land was being used by plaintiff by defendant keeping 238 head of beef cattle in the pasture in section 28, township 22, range 6 east, Chase county, Kansas, away from water, making said cattle nervous, preventing same from grazing normally, and preventing due increase of weight by using great quantities of explosives, blasting a trench for pipe line, most of the way across said land, constant movement of noisy trucks, men, backfillers and graders and movement of pipe and other materials along the right of way and off the same, whereby plaintiff suffered loss; that as a result of the negligence of defendant numerous cattle got out where defendant came through the fence at the east side, eight to ten head twice, fifty head once, ran flesh off themselves, caused several men at unreasonable times to have to recover them, and caused mixture with other cattle in pasture where separation desired had been previously made. Plaintiff claims of defendant damages of $562.89 under this item.

"(b) damages to pasturage, the herbage and grass, the causing of erosion of land from construction, cutting of new roadways through turf, outside the right of way, throwing up and leaving on the turf large and small sharp rocks, interfering with normal movement of cattle, causing excessive movement of plaintiff and employees through being unable to cross at convenient points without hazard, increasing hazards in that two pipe lines become more than twice the damage that one amounts to. The items of damage are made up of new roadway cut by defendant about one-fourth mile long and four feet, eight inches wide in the east pasture, and in the next west section about 100 yards long by same width, and loss of use of immediate turf area of five years to return to normal, $50; damages from rocks being thrown up and left, $100; damages to trench area of turf estimated to take five years to return to normal, $93.33; and the balance applicable to the balance of this paragraph approximate length of trench 750 rods, $225. Total of items of damage hereunder, $458.33.

"(c) damages to pasturages, the business of and for which the land was being used by plaintiff by defendant keeping 344 head of beef cattle in sections 29 and 19, township 22, range 6 east, Chase county, and section 4, township 23. range 7 east, Butler county, Kansas, riled and disturbed so preventing them from grazing normally and making proper increase in weight by use of great quantities of explosives in blasting a trench most of the way across said lands, constant movement of noisy trucks, men, backfillers and graders and movements of materials along and off the right of way, damage under this item amounting to $650.16.

"(d) damages to fences torn out by defendant, hedge, $6.

"(e) damages to crops, to wit: timber, by defendant cutting down three sycamore trees and twelve oaks averaging over one foot in diameter, $75.

"(f) damages to crops, plaintiff's half of corn about 3½ acres, $70.87 and half of wheat about 3½ acres, $48.50, caused by defendant's crew destroying them during and prior to laying pipe line in trench and backfilling same.

"Wherefore, plaintiff asks judgment against defendant for the sum of eighteen hundred seventy-one and 79/100 dollars with interest from August 1, 1937, with costs of this action."

The defendant admitted all the damages claimed in subparagraphs (b), (d), (e), and (f) in the total amount of $433.70. On this appeal, therefore, we are concerned only with the claims under subparagraphs (a) and (c).

There was testimony which tended to show that the blasting by the construction crew covered a period of seven or eight days, and that the explosives disturbed the cattle and prevented them from grazing normally. In section 28 it was necessary for the cattle to cross the pipe line to get to water. The plaintiff testified: "I don't remember during the construction of the gang ceasing operations at any time to permit the cattle to cross it to water, so that at the time that they were in that pasture the cattle were probably held off from water for a considerable period, and the area of that pasture is almost two-thirds south from the pipeline, but one-third north of it where the cattle would naturally water, would get water if they could get it."

The pasturage season was from April 15 to October 15. The plaintiff testified that the "disturbed cattle got off their feed and such condition would last for ten days to two weeks, and that during this time the pasture was not utilized and that loss of this ten days to two weeks' use of the pasturage reduced the season's value from $8 per head to $5 per head." There was other testimony as to the reduced value of the pasturage; some witnesses estimated the loss at a larger amount than that claimed by plaintiff.

The court gave the following instruction:

"The defendant admits certain items of damage amounting to the sum of $433.70 that the plaintiff is entitled to recover.

"The contract under which this pipeline was constructed provides for the payment to the plaintiff for damage to pasturage resulting from the construction of this pipe line, and this item of damage is the only item submitted to you for your consideration.

"You are instructed that the burden of proof is upon the plaintiff to show by a preponderance of the evidence, first, that there was damage to his pasturage on said sections by reason of the construction of said pipe line; and, second, to show the amount of such damage. And you are instructed that the measure of such damage is the difference between the fair market value of said pasturage for the season of 1937 if such pipe line had not been constructed, and the value of such pasturage taking into consideration the construction of such pipe line. And if you find from a preponderance of the evidence that the fair market value of such pasturage for the season of 1937 was less by reason of such operations than it would have been without such operations, then you should allow the plaintiff as his damage therefor the difference between such values, and you will add to that the amount of damages for other items, to wit, the sum of $433.70, which has been agreed upon by the parties."

The jury returned a verdict in favor of plaintiff in the sum of $1,248.50. This was $814.80 in addition to the items aggregating $433.70 upon which defendant offered to confess judgment.

Under clauses (a) and (c) of paragraph 8 of the petition, damage was alleged "to pasturage, the business of and for which the land was being used by plaintiff."

In Webster's Unabridged Dictionary, the word "pasturage" is defined:

"The right of pasturing cattle. *Chiefly Scots Law.*"

In the Century Dictionary the word "pasturage" is defined:

"1. The business of feeding or grazing cattle; pastorial occupation. 2. Grazing-ground; land appropriated to grazing. 3. Grass on which cattle or flocks feed. 4. In *Scots law,* the right of pasturing cattle on certain ground."

The operation of the cattle business was stated by the plaintiff:

"Q. Will you describe to the jury the way you conducted the ranch described in the petition, particularly sections 19, 28 and 29, of township 22, range 6 east, Chase county, Kansas, during the pasture season of 1937?

"A. I contracted cattle for the purpose of using this grass, the fall before, in Texas, for spring delivery, and correlated my numbers to the various pastures which we turned out on about the first of May. They were a set of good quality cattle, ranging from nine and a quarter to a thousand pounds per head when they were turned out. I have the figures in the brief there. The number of cattle that were put in the east pasture was 238, particularly of good quality cattle, three years old, two years old and three-year-old cattle, well-conditioned when I received them. I had three- and four-year-old cattle, 270 head, in the 1,500-acre pasture, and they weighed around a thousand pounds at the time I

received them in May. The cattle in 19 were three-year-old cattle and weighed around nine and a quarter when I received them; there were 74 head in there. We had been operating for a number of years on the theory of obtaining all the grass gain we could on our cattle for the entire pasture season, and then feeding them in the feed lots at Peabody after they had derived all the gain that was possible."

It is a matter of common knowledge that cattle grazing and feeding is one of the important industries of the state. Large districts are devoted chiefly to this business. Questions pertaining to pasturage contracts in the cattle-grazing area of the state are frequently before this court. (See our recent cases, *Degnan v. Young Bros. Cattle Co.*, 152 Kan. 250; *Lips v. Opp*, 150 Kan. 745, 96 P. 2d 865.)

By the terms of the original agreement the pipe-line company agreed to pay damages for "crops, *pasturage*, fences and buildings." At the time defendant paid plaintiff the stipulated consideration for the privilege of constructing the additional pipe line along the right of way the plaintiff signed a receipt, above quoted, which provided that the pipe-line company "agrees to pay any damage which may arise to crops, *pasture*, fences or buildings from the exercise of the rights granted."

Defendant denies any breach of the contract. At the trial, defendant admitted liability under clauses (*b*), (*d*), (*e*), and (*f*) of paragraph 8 of the petition, and contends that upon the payment of those items its obligations under the contract will be fully discharged. Defendant contends that under the contract it is not liable to the landowner because the cattle did not put on weight. Defendant asserts there is no difference in the meaning of the words "pasturage" in the original agreement, and the word "pasture" in the receipt signed by plaintiff when the stipulated payment for the second pipe line was made; that if the words are not synonymous, and the word "pasturage" means not only "pasture," but also the business of grazing cattle, then the defendant's liability must be measured by the supplemental agreement wherein the word pasture is used. Defendant further asserts that under the contract it agreed to pay for physical damages to concrete substances, to crops, fences and buildings, and to herbage, grass and sod, but did not agree to pay damages for any alleged injuries to the cattle business of plaintiff.

It is clear that "pasturage" may be used to designate the business of grazing cattle. The plaintiff testified that for forty years he had engaged in the business of growing and developing livestock. We think the trial court correctly interpreted "pasturage" according to

the usage in the cattle country. It included not only damage for the physical injuries done, but for the loss that accrued by preventing plaintiff from utilizing the grass for grazing purposes. The pipe-line contract was drawn by the assignor of defendant and if there was ambiguity in the terms used, it must be construed liberally in favor of the other party. (*Graff v. Osborne*, 56 Kan. 162, 42 Pac. 704.) Oil and gas leases are construed in favor of the lessor against the lessee (4 Summers on Oil and Gas, §§ 372, 759 and cases cited thereunder), and we think the same rule should apply to pipe-line contracts where the forms are prepared by the pipe-line company. Clearly the instruments in writing must be construed together.

If the activities of the defendant in the construction of the pipe line kept the cattle from water, and the noise from the blasting kept them from grazing, the use of the grass during such time was destroyed. Unless the cattle had access to an abundance of water and were permitted to graze in the usual way they would not make the normal increase in weight. In such case the financial loss to the plaintiff would be as certain as though the grass had been injured by fire or flood. The value of the grass was in its use for grazing purposes. As it is not claimed the grass could be severed and sold on the market, it would appear that the damage to the owner would be reflected in the rental value of the land. In *Miller & Lux, Inc., v. Pinelli*, 84 Cal. App. 42, 47, 257 Pac. 573, it was stated:

"The customary method of estimating the value of pasturage in a stock country is to determine the number of head of stock per acre which the ordinary natural growth of grass will sustain. Well-considered cases have held that it is a reasonable rule to estimate damages for the use or destruction of pasturage, from evidence of the reasonable rental value of such grazing land per month or season, per acre, according to the number of head of stock to be pastured thereon. . . ."

See McCormick on Damages, p. 490; *G. C. & S. F. Ry. Co. v. Jones*, 1 Tex. Civ. App. 372, 374, 21 S. W. 145; *Thompson v. Chicago B. & Q. R. Co.*, 84 Neb. 482, 121 N. W. 447, 23 L. R. A., n. s., 310.

Under the instructions of the court the value of the grass to the owner for pasturage was to be determined by taking the difference between the fair market value of the pasturage for the season if the pipe line had not been constructed and the value of the pasturage taking into consideration the construction of the pipe line. Under the circumstances, we think this was the correct measure of damages.

The judgment is affirmed.

ALLEN, J., dissents.