Sam E. WOHLFORD, Appellant,

v.

AMERICAN GAS PRODUCTION COMPANY, Appellee.

No. 14761.

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1955.

Rehearing Denied Jan. 31, 1955.

**214**

S. Tom Morris, Amarillo, Tex., Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., of counsel, for appellant.

D. H. Culton, Amarillo, Tex., Gentry Lee, Bartlesville, Okl., W. B. Weaver, San Antonio, Tex., C. C. Cammack, Fort Worth, Tex., F. H. Bacon, Bartlesville, Okl., Culton, Morgan, Britain & White, Amarillo, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellant, plaintiff below, sued the appellee, defendant below, for damages to four different kinds of property, grass, land, cattle, and fencing, which resulted from the blowing of a gas well. Appellant was the owner of the land, and the appellee, under a lease from appellant, owned and operated a gas well on the land. Appellee, in its operation of said gas well, caused arsenic to be blown from said well and deposited on the surface of the land, thereby causing the damages.

By his First Count, appellant sought to recover for the damage to grass as a growing crop under the specific provisions of the lease whereby appellee agreed to pay for damage to growing crops caused by its operations. By his Second Count, appellant sought to recover all of the items of damage upon the ground that appellee used more of the surface of appellant's land than was reasonably necessary for the prudent operation and production of said lease. By his Third Count, appellant sought to recover all of the items of damage upon the ground of appellee's negligence which proximately caused the damage.

Appellee admitted ownership and operation of the well, but denied that it was liable to appellant under any of the theories alleged. Affirmatively, appellee alleged that, as lessee, it was the owner and holder of the dominant estate in said section; that its operations were careful and prudent; that its operations were conducted in the usual and ordinary method; that it did not use more land than was reasonably necessary; and that it was not in any manner negligent.

Trial was to a jury, and upon a general charge the jury returned a verdict for the appellant, assessing damages as follows: 1. loss of grass, $552; 2. loss of cattle, $9,852; 3. damage to land, $3,220; 4. reasonable fencing expense, $900.

Appellant filed a motion for judgment on the verdict with certain reductions in the items of damage for grass and cattle. Appellee moved for judgment notwithstanding the verdict. The court denied appellant's motion, granted appellee's motion and entered judgment for appellee.

The reason for the court's action, as stated in its judgment, was "that there was no tenable ground of negligence or proximate cause shown".[1]

1. That reason was elaborated in a letter to counsel as follows:

"The briefs you have presented for and against the defendant's motion for judgment non obstante veredicto have been very helpful in my study of said motion. This has been a perplexing case, but the event was so unprecedented and astonish-

Appellant's first insistence is: "Appellant is entitled to recover for damage to the growing grass crop on his land by the express provisions of the lease even though appellee did not use more land than was reasonably necessary and was not negligent in any manner." The following provision was printed in the lease: "When required by lessor, the lessee shall bury its pipe lines below plow depth and shall pay for damages caused by its operations to growing crops on said land." While the district court was preoccupied with the questions of negligence and proximate cause, not important so far as the contractual obligation is concerned, it necessarily held that the grass did not come within the provision of the lease requiring payment for damages to "growing crops."

From the pertinent authorities,[2] we think it clear that the expression "growing crops", in its commonly recognized meaning, does not include the natural products of the soil, such as native grasses used for grazing cattle.[3] Appellant contends, however, that the land here involved was pasture grass land, had never been cultivated, and that under such circumstances natural grasses should be considered as growing crops. That argument would have more weight if the expression had been adopted with particular reference to the peculiar conditions of appellant's land. Instead, however, the words appear simply in the printed portion of the standard oil and gas mining lease form employed by the parties. There the ideas of burying pipe lines below plow depth and of paying for damages to growing crops are expressed in a single sentence. Obviously, the draftsman had in mind products of the soil which result from planting, cultivation and labor.

Secondly, appellant contends: "Appellant is entitled to judgment because appellee used more of appellant's land for its operations than was reasonably necessary and thereby caused appellant's damages."

Under the Texas law, an oil and gas lessee is entitled to use so much, and only so much, of the land as is reasonably necessary for carrying out the purposes of the lease.[4] Appellant's contention is that appellee, in blowing its well, used more of appellant's land than was reasonably necessary for the pru-

---

ing that I have come to doubt any tenable ground of negligence or proximate cause, and accordingly grant the motion. It seems to me that this occurrence was without fault just as much as the explosion in Parrot v. Wells [Fargo & Co., 15 Wall. 524], 82 U.S. 524 [21 L.Ed. 206]. "A judgment in proper terms may be presented promptly."

2. Among which see Cooke v. Ellis, Tex. Civ.App., 196 S.W. 642; West Central Drilling Co. v. Malone, Tex.Civ.App., 219 S.W.2d 601; Czerner v. Kirby, 53 N.M. 311, 207 P.2d 531, 532, 534; Moore v. Hope Natural Gas Co., 76 W.Va. 649, 86 S.E. 564, 567; Miethke v. Pierce County, 173 Wash. 381, 23 P.2d 405; 13 Tex. Jur. 4; 15 Am.Jur., Crops, Sec. 2; Annotations 131 A.L.R. 618, 125 A.L.R. 1415; cf. Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994, 997.

3. The Appellant testified:
"Q. Is this a native prairie sod? A. Excellent sod.
"Q. Has it ever been plowed? A. No, sir.

"Q. What kind of grass is on it? A. Grama and mesquite mostly.
"Q. Are those both good pasture grasses? A. Excellent.
"Q. And did you use this land for pasture and for no other purpose? A. Yes, sir; for no other purpose.
"Q. You never had any other kind of crop grown on it other than grass? A. No, virgin soil."

4. Moore v. Decker, Tex.Com.App., 220 S. W. 773; Joyner v. R. H. Dearing & Sons, Tex.Civ.App., 112 S.W.2d 1109, on second appeal, Tex.Civ.App., 134 S.W.2d 757; Placid Oil Co. v. Lee, Tex.Civ.App., 243 S.W.2d 860; Mid-Texas Petroleum Co. v. Colcord, Tex.Civ.App., 235 S.W. 710; United North & South Oil Co., Inc., v. Mercer, Tex.Civ.App., 286 S.W. 652; Stradley v. Magnolia Petroleum Co., Tex. Civ.App., 155 S.W.2d 649; Robinson Drilling Co., Inc., v. Moses, Tex.Civ.App., 256 S.W.2d 650; Yates v. Gulf Oil Corporation, 5 Cir., 182 F.2d 286; 31 Texas Jur. Sec. 27, p. 558.

dent operation of the lease and thereby committed a trespass.[5] It is of course true, as appellant argues, that a trespasser is to be held liable without reference to negligence or the exercise of care.[6] However, appellee did not trespass on so much of the land as was reasonably necessary for the *prudent* operation of the lease. The only evidence tending to establish a trespass goes to show that appellee did not prudently operate the lease and thereby it used more land than was reasonably necessary. Despite the claim of trespass, therefore, appellant's second contention resolves itself into a negligence issue, the same as his third contention which is frankly based on negligence.

Thirdly, appellant insists that the evidence was sufficient to present questions for the jury as to appellee's negligence and the proximate results thereof. There is no real dispute about the material facts. The death of the cattle, and appellant's other damages were caused by arsenic blown from appellee's well on appellant's land. Gas wells have to be cleaned periodically. The gas passing through the earth's formations carries with it dirt, liquids, shale, rocks, oil and water which settle around the wells and materially reduce the flow of gas. The object of blowing the well is to remove this accumulation, to blow it out of the well. The wells in this area are blown once or twice a year. The general practice is to open the top of the pipe and "let her blow". More

pressure and velocity are thereby obtained and more rubbish blown out of the well; a better cleaning job is done than when an "ell" is connected to the top outlet and the gas blown into a "sump", or when a "catcher" or "separator" is attached to the pipe. These devices cause a loss of pressure differential, and while they permit a workable degree of cleaning, the most efficient way to clean gas wells is to open them directly to the atmosphere. That is the method always used unless, because of the known presence in the well of salt water, oil, or perhaps some other objectionable or poisonous substance, the less efficient method of blowing into a catcher, separator or sump is required.

This well was drilled in 1946; it had been blown in the same manner a number of times since completion without any apparent damage. The well contained no salt water nor oil to be guarded against. It is conceded that this is the first known case of arsenic damage from a gas well.

■ Appellant further concedes that the law of Texas is as announced by the Supreme Court of that State in Texas & Pacific Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, 163:[7]

"* * * a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or to fail to

---

5. Appellant's complaint charged:

"The blowing of said well by defendant in such manner as to permit same to deposit arsenic or other poisonous substances upon the grass and surface of plaintiff's land was not reasonably necessary for the prudent operation and production of said lease, and the invasion and appropriation of approximately 200 acres of plaintiff's land for such purposes was not reasonably necessary for the prudent operation and production of said lease and constituted a trespass thereon, a nuisance thereto, and an unwarranted use of the surface of plaintiff's land."

6. 41 Texas Jur., Trespass, p. 414; Texas

& Pacific Ry. Co. v. Frazer, Tex.Civ.App., 182 S.W. 1161.

7. See also El Paso Electric Co. v. Barker, 134 Tex. 496, 137 S.W.2d 17; San Antonio & A. P. Ry. Co. v. Biggs, Tex.Civ. App., 283 S.W. 627; Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W. 2d 847; Cameron Compress Co. v. Whitington, Tex.Com.App., 280 S.W. 527; City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 27 A.L.R. 927; Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249; Parrot v. Wells, Fargo & Co., 15 Wall. 524, 82 U.S. 524, 21 L.Ed. 206; A.L.I. Restatement of the Law, 1948 Supp., Torts, Sec. 281, pp. 650, 651.

do an act when it was not anticipated, and should not have been anticipated, that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed."

Appellant relies upon the equally well established rule stated in Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, 849:[8]

"'* * * it is not required that the particular accident complained of should have been foreseen. All that is required is 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.' San Antonio & A. P. Ry. Co. v. Behne, Tex.Com.App., 231 S.W. 354, 356."

It seems to us, however, that when experience had eliminated from the hazards of blowing the well the dangers known sometimes to exist of salt water or oil, and when the presence of arsenic in the well admittedly could not have been foreseen, no duty rested on the appellee to protect the appellant from the unknown and unheard of hazard of arsenic in the well. See authorities cited in footnote (7), *supra;* especially the Restatement of the Law of Torts, Secs. 281 and 449, as brought forward in the 1948 Supplement, and Eldredge, Modern

Tort Problems, pp. 18 et seq.[9] We conclude, therefore, that the evidence did not present a jury question as to appellee's negligence, and judgment is

Affirmed.

Appellee may, therefore, have owed appellant some measure of duty countervailing to that insisted on in this action, namely to use the most efficient method for blowing the well, which without dispute was the method here employed.

---

8. See also Missouri-Kansas-Texas Ry. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474; Atchison v. Texas & P. Ry. Co., 143 Tex. 466, 186 S.W.2d 228.

9. Appellant was interested also in the efficient operation of the well, he being the holder of a one-eighth royalty interest.