**INTERNATIONAL DERRICK and EQUIPMENT COMPANY and its successor, Dresser Equipment Company,**

v.

**R. L. CROIX and Texas Employers Insurance Association, Intervenor.**

No. 16076.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1957.

Rehearing Denied March 13, 1957.

L. W. Anderson, Dallas, Tex., Henry Russell, Pecos, Tex., for appellant.

J. O. Bean, Dallas, Tex., James T. Smith, Midland, Tex., Henry D. Akin, Jr., Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The appellee, R. L. Croix, was plaintiff in the district court and will be so referred to here. Rumbaugh Rig Company had a contract for the erecting of a derrick for its owner, Trinity Drilling Company, in Glasscock County, Texas, where Trinity was to drill for oil. The plaintiff, an employee of Rumbaugh, was engaged in the work of erecting the derrick.

The derrick had been manufactured by International Derrick and Equipment Company, and we will refer to it in this opinion as "International" although it has changed its name to Dresser Equipment Company. The derrick was sold by International in 1945 to Dominican Seaboard Oil Company which transferred it to Compania Seaboard Dominicana de Petroleo C. Por. A., and sent it to the Dominican Republic where it was kept for about three years and used for drilling two oil wells. The derrick was brought back to the United States in 1948 and was acquired by Trinity which used it, over a four-year period in the drilling of fourteen oil wells. While in the Dominican Republic the derrick was erected, dismantled, moved and re-erected several times, and was exposed on occasions to salt water. After being acquired by Trinity and prior to the events giving rise to this litigation, the derrick had been dismantled and re-assembled a considerable number of times and had been skidded from one location to another three or four times.

On the afternoon of June 13, 1952, the derrick had been erected to a height of 136 feet and the erection of the gin pole, which would complete the derrick, was in progress. The gin pole, which is the top part of the derrick, contained four gin pole legs. These are nine-foot lengths of four-inch angle iron welded to plates by which they were to be bolted to horizontal iron beams. When a derrick is complete the gin pole legs are interconnected by other parts of the structure and surmounted by a pyramid-shaped device which forms the top of the derrick. One of the gin pole legs

had been bolted in place. At the top of this leg a pulley had been fastened and by means of a line through this pulley and another at the bottom of the derrick girts and braces were being hauled up to the top of the derrick for installation. While this phase of the work was in progress and a load was being hauled up, the gin pole leg pulled loose at the weld, was jerked downward by the weight upon the line and struck the plaintiff who was then working near the top of the derrick. He sustained injuries to his left hand, wrist and forearm.

The plaintiff filed a claim for compensation with the Texas Industrial Accident Board on July 8, 1952. On July 18, 1952, Texas Employers Insurance Association, the compensation insurance carrier of plaintiff's employer, reported that an initial payment of compensation had been made on June 24, 1952. On August 13, 1953, the plaintiff's claim for compensation was settled with the insurance carrier. Suit was filed by plaintiff on April 29, 1954, in the District Court of Ector County, Texas, against Trinity Drilling Company and International. The petition alleged, among other things, that the defendants were negligent in the design, manufacture and assembly of the derrick and in failing to securely weld and strengthen the gin pole leg. The petition prayed that the defendants, Trinity and International, "be duly cited to appear and answer" the petition and for judgment.

Trinity was served with the process of the Texas court on May 3, 1954, and on May 20, 1954, it removed the case to the United States District Court where it was docketed under Number 2012. After removal by Trinity, process issued out of the Texas court against International and service was attempted on June 10, 1954, by the delivery of a copy of the citation to Ed. Pewitt, a serviceman of International. International then filed its petition for removal and on this removal the cause was docketed in the United States District Court under Number 2038, whereupon International moved to quash the citation and the service thereof upon it on two grounds, first, that on the removal by Trinity the Texas court had lost jurisdiction and the issuance of the citation was a nullity, and second, that service was not effective because not made upon an authorized agent. This motion was granted on September 26, 1954, and on November 18, 1955, an order was entered dismissing case numbered 2038.

On July 28, 1954, a citation was issued out of cause 2012 and served on International. By a motion to dismiss and again by a motion for a directed verdict, International asserted that the action was barred by limitations. The motions were denied. Texas Employers Insurance Association intervened to assert the right of subrogation provided by Vernon's Ann. Tex.Civ.Stat., Art. 8307, § 6a. The cause was tried before a jury, which returned a verdict against International for $6,250. The verdict exonerated Trinity. Judgment was entered on the verdict, and by the judgment an apportionment of the award was made between the plaintiff and the intervener.

■■ The first question for our consideration is that of limitations. This question is to be resolved by the law of Texas, cf. Pacific Employers Ins. Co. v. Parry Navigation Co., 5 Cir., 1952, 195 F.2d 372. Among the provisions of the statutes of that State is the following:

> "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
>
> *　*　*　*　*　*
>
> "6. Action for injury done to the person of another. *　*　*" Vernon's Ann.Tex.Civ.Stat., Art. 5526.

There are two aspects of the limitation question, one as to the time when the cause of action "accrued" and the other as to when the action was "commenced and prosecuted". On the second of these phases the law of Texas is thus stated:

"Most of the articles of the Revised Statutes which prescribe periods of limitation for particular actions require that the action be 'commenced and prosecuted' within a designated time after the accrual of the cause of action. In cases to which such provisions are applicable, it is well settled that the running of the statute is not interrupted by the mere filing of a petition with the clerk. Not only must this initial step be taken, but there must be a bona fide intent that process shall be served at once upon the defendant. In the absence of a valid excuse for delay, the statute runs until citation is issued and service obtained, if the plaintiff by some affirmative act or declaration is responsible for delay in having citation issued and served, or if a bona fide attempt to obtain service is not made. A suit is not commenced by the issuance of process which cannot possibly bring the defendant before the court, or which may be served only in case the defendant may be found temporarily in the state. Needless to say, the running of the statute is interrupted where a suit is filed and the defendant is properly served with citation showing the cause of action against him." 28 Tex.Jur. 192, Limitation of Actions, § 99.

In a situation not unlike the one before us it was held by a Court of Civil Appeals of Texas that:

"The filing of a suit within the statutory period is sufficient to stop the running of limitation. The litigant has a right to assume that the officers will do their duty, and that the citation will be served promptly. Where the citation is not issued and served promptly, this does not affect the suit, unless the plaintiff is responsible for the failure of the officers to do their duty, as in cases where the plaintiff instructs the clerk not to issue, or instructs the sheriff, not to serve. Where this is done, it is held that the plaintiff has not a bona fide intention that citation shall issue and be served promptly, and for this reason the filing of the suit does not interrupt the running of the Statute. There is no evidence in this case that the plaintiff and his attorney did not have a bona fide intention that citation should issue and be served.

\* \* \* \* \* \*

" 'No affirmative duty rested upon the plaintiff to do anything further in connection with the citation until the plaintiff knew, or, by the exercise of ordinary diligence must have known, that the clerk had failed to do his duty and that citation had not issued.' " Allen v. Masterson, Tex. Civ.App., 49 S.W.2d 855, 856.

The petition was filed prior to the expiration of two years from the date of the injury. There is no contention made that the plaintiff did not intend to have process promptly issued and served. Cf. Digby v. United States Fidelity & Guaranty Co., 5 Cir., 1957, 239 F.2d 569. The time period between the filing of the petition on April 29, 1954, in the Texas court and the issuance of process against International on July 28, 1954, after removal to the Federal Court, is not such an interval as will justify an inference of lack of diligence. The Supreme Court of Texas had before it a case where more than two years intervened between the filing of the petition and the issuance of the citation with two months passing before service was made. The court said:

"Cases might arise where, as from long delay in the issuance of process within the knowledge of plaintiff, he would be presumed to have acquiesced in it, and would consequently be held responsible for it. But we have no such case before us. In the absence of proof to the contrary, it would be presumed that plaintiff used due diligence in the prosecution of his suit, and, if necessary, in the absence of a statement of facts it would be presumed that the citation in the record was not the first cita-

tion. We could not presume the contrary. So we conclude that the suit was not barred by neglect of plaintiff to have citation issued." Tribby v. Wokee, 74 Tex. 142, 11 S.W. 1089, 1090.

This doctrine runs throughout the Texas decisions over a long period of years. See the cases collected in the A.L.R. annotation to Hausman's Administrator v. Poehlman, 314 Ky. 453, 236 S.W.2d 259, 27 A.L.R.2d 233, at pages 253, et seq. Thus it is that the action was "commenced and prosecuted" within the meaning of the statute upon the filing of the petition within two years after the date of the injury. We need not determine whether the accrual of the cause of action was postponed until the intervener made its initial payment to the plaintiff, or until the plaintiff filed his claim with the Texas Industrial Accident Board, or until the later date when the plaintiff and the intervener made a final settlement.

International, the manufacturer, urges that it should escape liability for plaintiff's injury because the use of the gin pole leg for a seven-year period demonstrated, as a matter of law, that it was not imminently or inherently dangerous. It also contends that the injury resulted from a use for which the gin pole leg was not intended and such use and the resulting injury were not reasonably foreseeable. It was formerly the general rule that a manufacturer was not liable to third persons who had no contractual relations with him for injuries resulting from the construction, manufacture or sale of the manufacturer's products. Shearman and Redfield on Negligence, Rev.Ed. § 653. The cases so holding are legion, among which are Huset v. J. I. Case Threshing Machine Co., 8 Cir., 1903, 120 F. 865, 61 L.R.A. 303, and the many cases therein cited. In the Huset case are set forth many of the reasons variously assigned in judicial opinions to support the rule stated. In Thomas v. Winchester, 6 N.Y. 397, 57 Am.Dec. 455, a manufacturer placed upon the container of a poison the label of a simple and harmless medicine. The packaged item passed through trade channels to a druggist and was sold to a purchaser who, relying upon the label, took it and was injured. Recovery against the manufacturer was permitted and the original rule, by this and other like decisions, became subject to the qualification that a manufacturer who makes and sells an article inherently dangerous without proper warning of dangers not patently apparent, is liable to one injured thereby who uses the article in a manner which should have been contemplated by the manufacturer. This exception, originally restricted to poisons, explosives and other inherently dangerous articles, was gradually extended. In Devlin v. Smith, 89 N.Y. 470, 42 Am.Rep. 311, the manufacturer of a scaffold, which collapsed and killed an employee of the purchaser of the scaffold, was held liable. The liability was not based upon privity but was imposed by reason of a legal duty which the law imposes on every one to avoid acts in their nature dangerous to the lives of others. The court said:

> "A stronger case where misfortune to third persons not parties to the contract would be a natural and necessary consequence of the builder's negligence can hardly be supposed, nor is it easy to imagine a more apt illustration of a case where such negligence would be an act imminently dangerous to human life." Devlin v. Smith, 89 N.Y. 470, 478, 42 Am.Rep. 311.

In 1916 the leading case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas. 1916C, 440, was decided. The exception was broadened to include liability resulting from the use of things dangerous when negligently manufactured or prepared. Of the rule there adopted it has been said:

> "The doctrine of the MacPherson case is now generally accepted. [Citing authorities.] Its acceptance has brought all dangerous things into the same class as the 'inherently dangerous' things to which the principle already stated has always

been applied. The MacPherson case caused the exception to swallow the asserted general rule of non-liability, leaving nothing upon which that rule could operate. Wherever that case is accepted, that rule in truth is abolished, and ceases to be part of the law." Carter v. Yardley & Co., 319 Mass. 92, 64 N.E.2d 693, 700, 164 A.L.R. 559.

■ The rule which is now generally, though perhaps not universally, recognized has been set forth in the Restatement in this language:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured." Restatement, Torts, § 395.

Such is the law of Texas. The foregoing pronouncement is quoted and approved in Johnson v. Murray Co., Tex. Civ.App., 90 S.W.2d 920. See also Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, reversing in part 257 S.W.2d 140. The court instructed the jury that it should find for International unless they found that the gin pole leg was imminently or inherently dangerous at the time it was sold by International. The evidence justified the submission of the question to the jury and the verdict resolved the question adversely to International.

■■ The negligence asserted was a defective weld. There was evidence that upon the separation of the welded parts the defect was apparent but that because of being galvanized, it was not previously ascertainable. International urges that the interval of seven years between the manufacture of the derrick and the accident and the uses and abuses to which the derrick was subjected during that interval require a holding relieving it of liability. It asks the question, "how long are the courts going to impose liability upon a manufacturer", and expresses the view that public policy requires some definite limitation of liability. Where the manufactured commodity is one having moving parts, such as in engines or machinery, or is subject to deterioration, such as in some food and drug products, the lapse of time might be an intervening factor which would relieve the manufacturer of liability. The jury's verdict has implicit in it a finding that the gin pole leg was imminently and inherently dangerous when sold by International. So also does the verdict imply a finding that the intervening uses were not factors contributing to the cause of injury. The evidence supports the verdict as to liability. The lapse of seven years does not, per se, relieve a derrick manufacturer from liability for injuries caused by a defective weld overcoated with a galvanizer. Cf. Reed & Barton Corporation v. Maas, 1 Cir., 1934, 73 F.2d 359.

■ The final proposition for which International contends is that the gin pole leg was put to a use, at the time of the accident, for which it was not designed or manufactured and a use which was not reasonably foreseeable. The well-settled negligence rule in Texas is that "The ability to have foreseen and prevented the harm is determinative of responsibility." 30B Tex.Jur. 179, Negligence, § 8. But,

"* * * it is not required that the particular accident complained of should have been foreseen. All that is required is 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.' San Antonio & A. P. Ry. Co. v. Behne, Tex. Com.App., 231 S.W. 354, 356." Car-

ey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, 849, quoted with approval in Wohlford v. American Gas Production Co., 5 Cir., 1955, 218 F.2d 213.

■ There is no occasion to question the principle that a manufacturer is entitled to assume that his product will not be subjected to abnormal and unintended uses, and that no liability follows an injury resulting from an abnormal or unintended use. Prosser, Torts, 2nd Ed. 503, § 84. The evidence, although conflicting, justified a finding that the use to which the gin pole leg was being put at the time of the injury was a common and normal use. A verdict for the plaintiff based on such evidence will not be disturbed.

Finding no reversible error, the judgment is

Affirmed.