No. 44,979

CHRISTINE THOMPSON, *Appellant,* v. PHILLIPS PIPE LINE COMPANY, *Appellee.*

(438 P. 2d 146)

Opinion filed March 9, 1968.

*Tom L. Schwinn,* of Wellington, argued the cause, and *W. H. Schwinn, William M. Ferguson* and *Marsh D. Doctor,* of Wellington, were with him on the brief for appellant.

*Stanley L. Cunningham,* of Bartlesville, Oklahoma, argued the cause, and *Wm. J. Zeman, Lloyd G. Minter,* of Bartlesville, Oklahoma, *Harry O. Janicke, John A. Herlocker, Robert L. Bishop* and *Thomas D. Herlocker,* of Winfield, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from an order of the district court of Cowley County sustaining defendant's motion to dismiss for failure to state a claim upon which relief can be granted. (K. S. A. 60-212 [*b*] [6].)

The material facts are not in dispute. On February 18, 1933, the

plaintiff's predecessors in title executed two right of way contracts in favor of the Independent Pipe Line Company by granting it the right of easement across the following described realty located in Cowley County: The East Half of Section 5, Township 32 South, Range 8 East, and the East Half of Section 32, Township 31 South, Range 8 East.

The right of way contracts were identical in form except as to lands described, and recited that in consideration of the sums of money stated, the receipt of which was acknowledged, the pipeline company was granted the right to lay, maintain, inspect, alter, repair, operate, remove and relay a pipeline, or pipelines, for the transportation of oil and gas products and by-products thereof, water and other substances, and such drips, valves, fittings, meters and other equipment and appurtenances as may be necessary or convenient for such operations, and to erect, maintain, inspect, repair, operate and remove, upon a single line of poles, with necessary anchorage and appurtenances, telephone, telegraph or electrical lines, or any of them, over, through, upon, under and across the following described land [description of land], together with the rights of ingress and egress to and from said line or lines or any of them, for the purpose aforesaid, and then provided:

". . . Grantor to have the right to fully use and enjoy the above described premises, except as to the rights hereinbefore granted; and Grantee hereby agrees to pay any damages which may arise to crops, pasturage, fences or buildings of said Grantor from the exercise of the rights herein granted, and damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by Grantor, one by Grantee, and the third by the two so appointed, and their written determination of amount to be final and conclusive.

"Should more than one pipe line be laid under this grant, at any time, an additional consideration, calculated on the same basis per lineal rod as the consideration hereinabove recited, shall be paid for each line so laid after the first line.

"Grantee shall bury pipe lines below plow depth."

The agreement was made binding upon the heirs, executors, successors and assigns of the parties.

The defendant, Phillips Pipe Line Company, is the successor corporation to Independent Pipe Line Company. In December, 1963, Phillips constructed a large pipeline across the long axis of the plaintiff's property destroying the bluestem grass and causing damages to the surface of the land 100 feet wide along the entire length

of the easement. The amount of damage was disputed and on April 8, 1966, the plaintiff wrote the defendant designating an arbitrator to arbitrate the matter as was contemplated in the contracts. On April 15, 1966, the defendant replied, stating it deemed it unnecessary to appoint an arbitrator because the statute of limitations had run on the plaintiff's claim.

On August 3, 1966, the plaintiff commenced this action for damages to her pasture and praying for the specific performance of the arbitration provisions of the contracts. The two right of way contracts were incorporated in the petition, the pertinent parts of which are summarized and quoted as follows:

The plaintiff alleged she was the owner in fee simple of the real estate described in the right of way contracts; that during the month of December, 1963, the defendant or its agents or employees commenced operations for the construction of a large pipeline across the long axis of the easements granted on the described real estate; that the defendant dug a trench for the purpose of laying said pipeline along the trace of an easement owned by the defendant, and in the course of said construction destroyed a strip of land 100 feet in width along the entire length of said easement as it traverses the plaintiff's property. The petition then alleged:

"Said area, as a result of said construction, has been completely destroyed for the highest, best and only use and purposes for which said land has been and is being devoted, namely, the pasturing of cattle. Said area because of the disturbance to its surface, has now grown up in milkweed, sticker plants and various other noxious weeds, totally inedible by cattle. Prior to said construction, said land was overgrown with abundant bluestem grass—best pasturage for beef cattle to be found upon the continent. Along the trace of the pipeline right-of-way said area is now thronged with rocks and boulders interspersed with mounds of earth and frequent low spots and sink holes. The character of said land as bluestem pasture has been irrevocably altered and destroyed.

"Because of the manner in which the defendant conducted its work by excavating and scraping off the top soil and placing the spoil upon the ground, the land will never restore itself to native bluestem pasture land. The area damaged by said constructs covers an area 640 rods (two miles) in length of the reasonable value of $2.50 per rod, or $1,600.00."

The petition further alleged:

"In accordance with the terms of said written contracts, Plaintiff stands ready to arbitrate and for this purpose suggests the name of William A. House, Cedarvale, Kansas, as her appointee. Defendant has failed, neglected and refused to appoint an arbitrator as provided in the written contracts."

The prayer was that the arbitration provision of the right of way contracts be specifically enforced "and for such other and further relief to which she may show herself to be entitled upon the trial of this action."

Phillips filed a motion to dismiss the action on the ground "the petition of the plaintiff on file herein fails to state a claim upon which relief can be granted. K. S. A. 60-212 (*b*) (6)."

On November 17, 1966, the district court found "that the motion should be sustained," and ordered costs be taxed to the plaintiff. This appeal followed.

We first turn to the defendant's contention the plaintiff's claim for relief was barred by the statute of limitations. It is argued the rule that a mere agreement to arbitrate does not toll the running of the statute of limitations as to the cause of action sought to be arbitrated is well established in law, and reference is made to 5 Am. Jur. 2d, Arbitration and Award, § 21, p. 536, and 54 C. J. S., Limitation of Actions, § 255, p. 287. It is further argued that the damages alleged to have been sustained were caused by the construction in December, 1963, and since the plaintiff did not seek arbitration until April, 1966, the claim for relief, being in tort, is barred on its face by the statute of limitations. (K. S. A. 60-513 [4].)

The plaintiff contends her claim for relief is based upon two written contracts in which the defendant agreed to pay damages to crops, pasturage, fences or buildings, and contends that the five-year statute of limitations prescribed in K. S. A. 1965 Supp. 60-511 (1) is applicable. She argues there is nothing unusual about an agreement to pay damages and that such contracts do not contravene public policy, and cites and relies upon *Berns v. Standish Pipe Line Co.,* 152 Kan. 453, 105 P. 2d 893, and *Kennedy v. Great Lakes Pipe Line Co.,* 149 Kan. 48, 86 P. 2d 521.

Pursuant to K. S. A. 60-208 (*a*), the plaintiff's petition must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and a "demand for judgment for the relief to which he deems himself entitled." Relief in the alternative, or of several different types may be demanded. The pleader may allege or make contradictory or alternative statements until he finds out which theory, if any, the facts support, and is permitted to shift the theory as the facts develop. (60-208 [*e*] [2]; *Beams v. Werth,* 200 Kan. 532, 438 P. 2d 957.) See, also, 1 Vernon's Kansas Statutes

Annotated [Fowks, Harvey, Thomas], § 60-208, pp. 491-493. In stating a claim on contract, the pleader should allege the making of the contract, its terms, and the breach thereof, which must not be left to inference. Where a copy of the contract is attached to a pleading as an exhibit it is a part thereof for all purposes. (60-210 [c].)

In the instant case, the plaintiff's petition sets forth a claim for damages to her grass and land caused by Phillips' construction of a pipeline across her property. It was not alleged that Phillips negligently constructed the pipeline, and we find no allegation which suggests the plaintiff's claim is in tort. On the contrary, the plaintiff incorporated the right of way contracts into her petition and alleged damages to her pasture in the amount of $1,600. Pursuant to those contracts the plaintiff was to have the right to full use and enjoyment of the property except as to the rights granted in the easements. The defendant's only right to go upon the plaintiff's property was by virtue of the contracts and it agreed to pay the plaintiff any damages which may arise to crops, pasturage, fences or buildings in carrying on the work it was authorized to do. While the defendant further agreed that any damages, if not mutually agreed upon, would be ascertained by arbitration, it was alleged the defendant refused to appoint an arbitrator as provided in the contracts. As hereafter concluded, this constituted an implied revocation of the agreements to arbitrate and immediately vested a right of action in the plaintiff to sue for damages which she sustained by reason of the breach. (*Berry v. Carter*, 19 Kan. 135; *Dolman and Clark v. Kingman County*, 116 Kan. 201, 206, 226 Pac. 240.) See, also, *Puls v. Giwosky*, 116 Kan. 82, 225 Pac. 1052; *Berns v. Standish Pipe Line Co.*, supra, and *Kennedy v. Great Lakes Pipe Line Co.*, supra. We are of the opinion the five-year statute of limitations prescribed in 60-511 (1) is applicable, and this conclusion makes it unnecessary to discuss whether an agreement to arbitrate will or will not toll the running of the applicable statute of limitations as contended by the defendant.

The defendant contends the district court correctly sustained its motion to dismiss upon the grounds that courts will not enforce an agreement to arbitrate future disputes in the absence of a statute making specific performance compellable.

The statutory law of Kansas with respect to arbitration is limited to that contained in Kansas Statutes Annotated, Ch. 5, which was

enacted in 1876 and has not since been revised. The statute contemplates the submission and arbitration only of existing disputes. (K. S. A. 5-201.) See Kansas Arbitration and Uniform Act, Fowks and Oxandale, Vol. 36 JBK, pp. 300-305 (1967), and Voluntary Arbitration, Beatty, Vol. 22 JBK, pp. 208, 216-218 (1954). Where statutory arbitration is not applicable, this court has followed the common law rule that an agreement to submit a matter to arbitration is revocable at will by either party while it is executory, that is, at any time before an award has been made, and that such agreements are invalid or at least unenforceable either at law or in equity.

*Dolman and Clark v. Kingman County,* supra, was an original proceeding in mandamus to compel the county commissioners to submit to arbitration. The action involved a construction contract whereby the plaintiffs agreed to construct three bridges in Kingman County pursuant to standard specifications prepared by the Kansas Highway Commission. The specifications prescribed the quality of gravel and cement to be used. The contract provided that:

"Both parties to this contract agree that before action shall be started in any court, any question at issue under this contract shall be referred to a board of arbitration consisting of one engineer appointed by the board, one by the contractor, and a third to be chosen by these two   .   .   ." (l. c. 202.)

The plaintiffs alleged they incurred damages and extra expense because the county engineer arbitrarily required they do more work and use more materials than was required by the specifications in the contract. The defendant filed an alternative motion to quash on several grounds, one being that the arbitration agreement was not valid and binding upon the parties. The court sustained the defendant's motion to quash, and said:

"Again the contract was executory. The arbitration provision in it was in no sense statutory. It was an attempt at a common law submission and the general rule is that either party may revoke such an agreement before an award is made. (*Guild v. Railroad Co.,* supra; 5 C. J. 53; Note 47 L. R. A., n. s., 401.) Although there was no formal revocation by the defendant, plaintiffs allege that the defendant has unqualifiedly refused to submit to an arbitration, and that this action was taken at a regular meeting of the board. The action of the defendant is equivalent to a revocation. There may be an implied as well as an express revocation and it is to be implied by an act which makes it impossible for the arbitrators to proceed. (See authorities cited.) The revocation of the agreement if valid would of course entitle the other party to any damages he sustained by reason of the breach." (l. c. 206.) ·

In 5 Am. Jur. 2d, Arbitration and Award, § 71, pp. 572, 573, the rule is stated:

"At common law an executory agreement to arbitrate present or prospective differences, not made a rule of court, will not be enforced by the courts except by action for breach of the agreement, against a party who revokes or fails or refuses to perform it. As a general rule specific performance of an arbitration agreement is denied, and the courts will take jurisdiction of a suit on the same subject matter notwithstanding the agreement. . . ."

In *Guild v. Railroad Co.*, 57 Kan. 75, 45 Pac. 82, the plaintiff sought specific performance of a contract in writing for the purchase and sale of land at a price to be fixed by appraisers to be selected by the parties. Appraisers were thereafter named, in accordance with the provisions of the contract, and two of them proceeded to make a valuation of the property. It was held the contract was enforceable and in the opinion it was said:

". . . An appraisement having been made by a majority of the appraisers, the contract became complete in all its parts and enforceable specifically . . ." (l. c. 81.)

Obviously, *Guild* is distinguishable from the instant case; here the defendant refused to appoint an arbitrator as provided in the written contracts.

While the contracts before us do not contain broad stipulations that "any" or "all" controversies arising thereunder are subject to arbitration, we find nothing in their terms which implies that arbitration is a condition precedent to the maintenance of an action for breach of contract. In short, we are of the opinion the contracts contain mere naked agreements to arbitrate, which are revocable at will by either party at any time before an award is made. See *Guild v. Railroad Co.*, supra, p. 80.

The defendant's refusal to appoint an arbitrator is in fact an implied revocation of the contracts to arbitrate. Revocation is to be implied from any act which makes it impossible for the arbitrators to proceed. (*Dolman and Clark v. Kingman County*, supra.) However, this does not leave the plaintiff without remedy. The defendant's revocation of the arbitration agreement entitles the plaintiff to any damages she sustained by reason of the breach. (*Berry v. Carter*, supra, Syl. ¶ 4 and p. 139.) The rule is stated in 5 Am. Jur. 2d, Arbitration and Award, Sec. 73, p. 575, as follows:

"At common law, the revocation of, or a failure or refusal to perform, a valid arbitration agreement (except one of the limited class in which arbitration may be made a valid condition precedent to suit) by a party thereto ordinarily leaves the opposite party the sole remedy of an action for breach of the agreement to arbitrate, wherein he may recover whatever actual loss he may prove, just as he could do for the breach of any other contract. . . ."

Except for one clause not here material, this court considered right-of-way contracts in *Berns*, supra, which were identical with the contracts here involved. An award for damages in favor of the plaintiff was affirmed upon the basis that his action was one for breach of contract. See, also, *Kennedy v. Great Lakes Pipe Line Co.*, supra, which involved a right-of-way contract virtually verbatim with those involved in the *Berns* case. Those cases are authority that the grantee of pipeline easements is liable for damages caused in the exercise of the rights granted in the contracts even thought it is not guilty of negligence. (*McLeod v. Cities Service Gas Company*, 131 F. Supp. 449, affirmed 233 F. 2d 242; *The Illinois Pipe Line Co. v. Brosius*, 106 Ind. App. 390, 20 N. E. 2d 195.)

We are of the opinion the plaintiff's petition stated a claim for relief for breach of contract and that the district court erred in sustaining the defendant's motion to dismiss the action. The case is reversed and remanded with directions to permit the plaintiff to pursue her claim for relief.

It is so ordered.