(732 P.2d 797)
No. 59,302

CLAUDE H. TROTTER, Trustee, and H. DARBY TROTTER, *Appellants,* v. WELLS PETROLEUM CORPORATION, GEORGE A. DURGOM, MAX FINK, NATHANIEL WEISBAUM, PHILLIP WEISBAUM, and JACK WIDEMAN, *Appellees.*

Opinion filed February 12, 1987.

*Gary House,* of Robbins and House, of Sedan, for appellants.

*Jon R. Viets,* of Independence, for appellees.

Before BRAZIL, P.J., PARKS and BRISCOE, JJ.

BRAZIL, J.: Oil and gas lessors appeal the trial court's holding that the words "growing crops" in their lease did not include naturally occurring pasture.

In 1977, J. David, Claude, and H. Darby Trotter purchased some land in Chautauqua County, in David's name. David, a Texas attorney specializing in oil and gas law, and his wife executed an oil and gas lease to the property in 1980. David and his wife deeded the property to Claude and Darby in 1981. The various defendants all have a portion of the lessee's interest in the lease.

The trial court summarized the Trotters' claims, only some of which might have involved damage to "growing crops." Those

involving possible crop damage are: (1) reasonable rental value of pasture for four years, including pasture on the south half of the section where the defendants' wells are located and on two adjoining sections; (2) reasonable rental value for grazing of winter wheat for four years for the cultivated portion of the section where the wells are located; (3) complete loss of six acres of pasture used for roads to the wells; and (4) $1,000 per well for damage to approximately three acres of pasture. which twelve of the wells occupied. The court then reached the following pertinent conclusions:

"4. . . . Plaintiffs offered no evidence of damage to growing wheat. Other jurisdictions are not in conformity as to whether native pasture constitutes a "growing crop." There are no reported Kansas decisions on point. In Texas, where the original lessor, J. David Trotter, practices oil and gas law, native pasture is not considered a "growing crop" and it seems appropriate in this case to follow the Texas precedent and deny recovery for any damage to the pasture, which has not actually been used for grazing since before 1977.

"5. Plaintiffs' claim for damages for loss of pasture rental is not supported by the evidence. There was only one well in the pasture during 1981, 1982, and 1983. More wells were drilled in 1984 and 1985. However, with respect to that portion of Plaintiffs' land, the evidence is that the property was never suitable and made ready for leasing. Even if it were, plaintiffs had an affirmative duty to mitigate damages by installing the 300 to 400 feet of fence necessary to segregate the pasture, which they chose not to do. Fundamentally, plaintiffs have never leased this land for pasture, have never offered it for lease, and have never been refused [by a potential tenant] on account of defendants' ongoing operations. . . .

. . . .

"7. Plaintiffs' claim for damages for construction of the new roadway . . . is unsupported by the facts and the law. . . . Plaintiffs offered no evidence upon which to base their claim . . . except that approximately one acre of cultivated land was taken out of production. However, no growing crops were damaged in the process."

The parties appear to agree that this issue involves the interpretation of an ambiguous phrase in the lease. However, in construing written instruments "[t]he fundamental rule . . . is that the intent and purpose of the parties be determined from an examination of the entire instrument or from its four corners. Thus the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions." *Heyen v. Hartnett*, 235 Kan. 117, 122, 679 P.2d 1152 (1984). "The interpretation of a written contract which is free

from ambiguity is a judicial function." *Hall v. Mullen,* 234 Kan. 1031, 1037, 678 P.2d 169 (1984). "[A]mbiguity in a conveyance does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which of two or more meanings is the proper meaning." *Brungardt v. Smith,* 178 Kan. 629, 636, 290 P.2d 1039 (1955). See *Hall v. Mullen,* 234 Kan. at 1037. The first question is: Does the lease indicate whether the original lessor and lessee intended to include native grasses in the phrase "growing crops"? .

"[A]n oil and gas lessee or mineral owner usually is entitled to enjoy reasonable surface user necessary or convenient for his exploration and development operations, absent express provision to the contrary in the lease or instrument severing the mineral interest." 1 Williams & Meyers, Oil and Gas Law § 218.7 at 225 (1986). However, if the lease specifically provides for the recovery of damages, or if the conduct of the lessee is tortious, or if the surface use rights of the lessee are exercised unreasonably and excessively, the lessor is entitled to recover his damages. Annot., 87 A.L.R.2d 236.

Appearing as typewritten provisions in a space between printed portions of the lease are the following:

"Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for its operations thereon, except water from lessor's wells, lakes & streams.

"*Lessee shall bury his pipe lines below plow depth and promptly cover and level all pits.*

"No well shall be drilled nearer than 200 feet to the house or barn now on said premises without the written consent of the lessor.

"*Lessee shall pay for all damages caused by its operations to growing crops, terraces, fences and gates on said land.*

"Lessee shall have the right at [any] time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

"Lessee shall restore each drill [site] to its original condition promptly upon plugging or abandoning each well.

Where an oil and gas lease provided that "the lessee shall bury its pipe lines below plow depth and shall pay for damages caused by its operations to growing crops on said land," a federal court applying Texas law held that native pasture grass was not included in the phrase because the reference to "plow depth" in the same sentence indicated that the parties intended to cover

only items which resulted from planting, cultivation, and labor. *Wohlford v. American Gas Production Company*, 218 F.2d 213 (5th Cir. 1955). See Annot., 87 A.L.R.2d 235, 238 (discussing *Wohlford*). *Wohlford* provides some support for the trial court's decision here since the crop damage clause is within two sentences of a reference to "plow depth." However, this reasoning is not strong enough to be dispositive in this case since the phrases were not in the same sentence, as in *Wohlford*.

Several Kansas cases have involved a clause for crop damage, but none have considered the precise issue involved here. In *Fast v. Kahan*, 206 Kan. 682, 481 P.2d 958 (1971), the court held no damages could be recovered under such a clause without proof of crop damages. In *Berns v. Standish Pipe Line Co.*, 152 Kan. 453, 105 P.2d 893 (1940), the court affirmed an award for lost grazing where the lease required the lessee to pay for damages not only to "crops" but to "pasturage." The court relied on the latter term. 152 Kan. at 457-59. See also *Thompson v. Phillips Pipe Line Co.*, 200 Kan. 669, 438 P.2d 146 (1968) (claim for loss of pasture where damages to "crops [and] pasturage" covered by clause). In *Hiatt v. Natural Gas Co.*, 108 Kan. 472, 196 Pac. 448 (1921), the court held a clause covering crops and fences did not include damages caused when a right of way owner's construction operations caused cattle to be so nervous they would not feed. Finally, in *Monfort v. Layton*, 1 Kan. App. 2d 622, 571 P.2d 80 (1977), the court stated that a covenant to " 'pay for damages caused by [the lessee's] operations to growing crops' " (1 Kan. App. 2d at 623) would not support a claim for " 'loss of anticipated future crops occasioned by damage to the soil.' " 1 Kan. App. 2d at 628. These cases, especially *Hiatt* and *Monfort*, suggest that the clause in this case would not support the Trotters' claim for loss of pasture rental since it appears to be based on the theory that the defendants' operations rendered it impossible to pasture cattle on the land, not that the operations actually harmed all the native grasses growing on all the potential pasture.

On the whole, neither *Wohlford* nor the Kansas cases cited provide a basis for resolving this issue simply by construing the language used in the lease. The trial court relied on its understanding of Texas law on the subject and the fact the original

lessor was an expert on Texas oil and gas law to conclude that the parties intended to exclude native grasses from the crop damage clause. *Wohlford* does not, however, resolve for all cases that "growing crops" does not include native grasses; it resolves the question only when a reference to "plow depth" appears in the same sentence with "growing crops." Thus, based on our review of the record we find no evidence outside the lease which explains the parties' intent on this issue.

The cases the Trotters rely on actually offer a sound basis for concluding their pasture is not included in "growing crops." As explained in Annot., 87 A.L.R.2d at 238-39, the Oklahoma cases they cite all involved plants which had been seeded, fertilized, or otherwise tended; no evidence was offered in this case to indicate the Trotters in any way cultivated or worked their pasture to alter its natural growth. While other cases may arise which would raise the question how much cultivation, if any, is enough to make native grasses a "growing crop," this case avoids that possibly difficult problem. Furthermore, the Trotters never used the land for pasturage nor did they attempt to lease it to anyone for that purpose.

*Wohlford* indicates an argument might be persuasively made where all the lease land is uncultivated sod and a crop damage clause is contained in the lease since the reference cannot be to cultivated grounds. 218 F.2d at 215. Nearly half of the section at issue in this case, however, was cultivated, so the clause could refer just to that portion of the lease.

We conclude that completely uncultivated and never utilized native grass is not, absent some contrary indication of the parties' intent, a "growing crop" under an oil and gas lease clause providing the lessee must pay for damage to "growing crops."

Affirmed.